SHASHIKANT S. PATEL & another[1] vs. PLANNING BOARD OF NORTH ANDOVER & another.[2]

No. 88-P-586.

Essex. April 11, 1989. — June 20, 1989.

Present: GREANEY, C.J., KASS, & FINE, JJ.

*Easement. Real Property*, Easement. *Subdivision Control*, Access ways, Plan. *Zoning*, Access to public way. *Way*, Public: subdivision control; Private. *Deed*, Construction. *Estoppel.*

Although a town's planning board acted properly under the subdivision control law in requiring the developer of a subdivision to establish easement rights across a certain lot in the subdivision to provide adequate access by connecting streets to any future subdivision on the abutting land, the steps taken to establish the easement, namely, the mere approval and recording of a subdivision plan indicating the location of a "proposed roadway," were insufficient to carry out the board's intent, where none of the attendant circumstances indicated that an easement had been created by any express act or grant, or by prescription, or by implication [480-481]; nor did an easement exist by reason of estoppel [481-483].

CIVIL ACTION commenced in the Superior Court Department on December 20, 1985.

The case was heard by *George A. Sullivan*, J., sitting under statutory authority.

*Jerry B. Plumb* for the defendants.

*Russell R. Karl* for the plaintiffs.

FINE, J. The plaintiffs own a lot in Marbleridge Estates, an approved subdivision in North Andover. In this action against the town's planning board and the developer of Abbott Village Estates, an adjacent subdivision, the plaintiffs challenge the proposed construction on their property of a roadway which

---

[1] Vina S. Patel.

[2] Benjamin C. Osgood, trustee of Abbott Village Trust.

would connect streets in the two subdivisions. A Superior
Court judge, after a jury-waived trial, ruled in favor of the
plaintiffs, concluding that no easement for the roadway had
been created. We affirm.

The underlying facts are not in dispute. In 1975, the Barco
Corporation (Barco) submitted to the North Andover planning
board a preliminary subdivision plan for Marbleridge Estates.
The board approved the plan in March of 1976 on the condition
"[t]hat the proposed 50 foot roadway easement from the turn-
around [at the end of Woodberry Lane, now a public way] be
aligned along the lot line between lots 6 and 7." Imposition
of the condition was based upon section IV(A)(1)(d) of the
town's subdivision rules and regulations which provided: "If
adjoining property is not subdivided but is, in the opinion of
the board, suitable for ultimate development, provision shall
be made for proper projection of streets into such property by
continuing appropriate streets within the subdivision to the
exterior boundary thereof." To satisfy the condition imposed
by the board, Barco's subdivision plan was revised to include
a broken line across lot 6 and the notation: "proposed 50'
roadway easement." The revised plan was recorded.

Another section of the town's subdivision regulations (sec-
tion IV [F][4]) provides that "[a]ll easements . . . that the
[p]lanning [b]oard deems necessary, shall be granted to the
[t]own of North Andover. A copy of the written easement,
along with a registered land surveyor's plan of the easement,
shall be provided to the [p]lanning [b]oard for filing and, also,
to any and all [d]epartments or [b]oards affected and recorded
in the appropriate [r]egistry of [d]eeds . . . ." No such steps
were taken by Barco with respect to the proposed easement
on lot six. Nevertheless, on June 21, 1976, the board issued
to Barco a release from its performance bond which included
a release of the town's "right, title and interest" in lots one
through ten, and a release of "restrictions as to sale and building
specified thereon."

In 1976, Barco sold lot six, consisting of trees and under-
brush, to Roper Homes Co., Inc. (Roper). The quitclaim deed
to Roper, although it made no specific reference to an easement

on the property, included a reference to the recorded subdivision plan. After acquiring the property, Roper built a house on the lot. Having consulted with the building inspector, Roper placed the house on the opposite side of the lot from the proposed roadway. The setback of the house from the proposed roadway, however, is only twenty-eight feet, and, if the roadway were to be built, a thirty-foot setback requirement in North Andover's zoning by-law would be violated. Roper sold the property by a quitclaim deed that referred to the recorded subdivision plan, and the plaintiffs subsequently purchased it, also by a quitclaim deed referring to the subdivision plan. The plaintiffs at all relevant times have been aware of the appearance of the proposed roadway easement on the plan.

In June, 1985, the trustee of Abbott Village Estates submitted to the board a plan for a proposed subdivision on undeveloped property to the rear of Marbleridge Estates. The plaintiffs' property borders on the proposed new subdivision. The board conditioned its approval of the plan for Abbott Village Estates on the developer's promise, once a watershed moratorium had been lifted, to construct a roadway and underground utilities across the proposed easement strip on the plaintiffs' property. The strip, at the time, consisted of lawn, shrubs and large trees. The roadway would connect Woodberry Lane to the Abbott Village Estates development, providing it with a third means of access.

The plaintiffs brought this action under G. L. c. 41, § 81BB, alleging that the board exceeded its authority in ordering the construction of the roadway. The trial judge found the notation on the Marbleridge Estates subdivision plan referring to the proposed roadway easement across lot six to be ambiguous, and, relying on *Labounty* v. *Vickers*, 352 Mass. 337, 344 (1967), looked to the intent of the parties to determine whether an easement was created. The judge found that Barco did not, by adding the notation to the subdivision plan and recording it, intend to convey an easement to the town, and he concluded that "no such easement was ever created by an expressed grant, or by an expressed reservation, or by implication, or by necessity."

We assume for purposes of this appeal that the judge's finding with regard to Barco's intent was clearly erroneous and that Barco did intend to create an easement before conveying lot six. The only evidence concerning the state of mind of Barco's president in 1976 was his testimony that he intended to create an easement. In requiring Barco to establish easement rights in the strip crossing lot six to provide adequate access by connecting streets to any future subdivision on the abutting land, the board acted reasonably from the standpoint of safety and orderly development and well within its authority under the subdivision control law. See G. L. c. 41, §§ 81M and 81W; *McDavitt* v. *Planning Bd. of Winchester*, 2 Mass. App. Ct. 806, 807 (1974); *Curtin* v. *Board of Survey & Planning of Waltham*, 15 Mass. App. Ct. 978, 978 (1983); *Patelle* v. *Planning Bd. of Woburn*, 20 Mass. App. Ct. 279, 283-284 (1985). In light of the obvious purpose of the condition, to take effect only if and when the abutting land should be developed, neither the use of broken lines on the plan to define the street, nor reference to the roadway as "*proposed*," should prevent the creation of a valid easement. See *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. 675, 677-678 (1965); *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 436-437 (1981). See also *Canton Highlands, Inc.* v. *Searle*, 9 Mass. App. Ct. 48, 53 (1980). Nevertheless, we conclude that neither the steps taken nor the attendant circumstances in this case resulted in the creation of the easement.

1. *Creation of easement by express act of the parties, by prescription, or by implication.* No written deed of an easement was ever given to the town or to the owner of the abutting property. The mere approval and recording of a subdivision plan which refers to a roadway does not convey an easement in favor either of those owning property abutting the subdivision or the public generally.[3] See *Uliasz* v. *Gillette*, 357 Mass. 96,

---

[3] No public way over the plaintiffs' property has ever been created. See *Fenn* v. *Middleborough*, 7 Mass. App. Ct. 80, 83-84 (1979); *Witteveld* v. *Haverhill*, 12 Mass. App. Ct. 876 (1981). The town's purpose in seeking to establish the roadway easement could have been accomplished by construction of a private way open to travel and use by the general public. See *Smith* v. *Lowell*, 139 Mass. 336, 340 (1885); *Opinion of the Justices*, 313 Mass. 779, 782 (1943).

103-104 (1970); *Dolan* v. *Board of Appeals of Chatham*, 359 Mass. 699, 701-702 (1971); *Murphy* v. *Donovan*, 4 Mass. App. Ct. 519, 526 (1976), and cases cited. Nor did the deeds to the successive purchasers of lot six, each of which referred to the recorded plan, create any right to an easement on the part of abutters or the public generally, as such persons were strangers to the deed. See *Hodgkins* v. *Bianchini*, 323 Mass. 169, 172 (1948). Thus, regardless of whether a future roadway connecting streets is considered an easement to the public or to the owners of the abutting property, no such easement was ever created by any express act or grant.

There is no claim that any party has obtained prescriptive rights to the easement. As there were other means of access to Abbott Village Estates, there can be no claim of necessity and, thus, no easement by implication on that basis. See *Uliasz* v. *Gillette*, 357 Mass. at 102. Nor was an easement created by implication arising upon the severance of parts of a tract of land; there is no claim that Abbott Village Estates and lot six in Marbleridge Estates were ever held in common ownership. See *Labounty* v. *Vickers*, 352 Mass. at 344-345. Restatement of Property § 474 (1944). Compare *Scagel* v. *Jones*, 355 Mass. 208, 209-210 (1969); *Murphy* v. *Donovan*, 4 Mass. App. Ct. at 526.

2. *Easement by estoppel.* The question remains whether, in the circumstances, notwithstanding the absence of formalities, an easement was created by estoppel. The Massachusetts cases recognizing that an easement may be created by estoppel have fallen into two general categories. In the first category, " 'when a grantor conveys land bounded on a street or way, he and those claiming under him are estopped to deny the existence of such street or way, and the right thus acquired by the grantee (an easement of way) is not only coextensive with the land conveyed, but embraces the entire length of the way, as it is then laid out or clearly indicated and prescribed.' *Casella* v. *Sneierson*, 325 Mass. 85, 89 [1949], and cases cited. This rule is applicable even if the way is not yet in existence, so long as it is contemplated and sufficiently designated." *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. at 677-678 (citations

omitted). See also *Thompson* v. *Lorden,* 358 Mass. 69, 73 (1970). In the second category, "where land situated on a street is conveyed according to a recorded plan on which the street is shown, the grantor and those claiming under him are estopped to deny the existence of the street for the entire distance as shown on the plan. See *Farnsworth* v. *Taylor,* 9 Gray, 162 [1857]." *Goldstein* v. *Beal,* 317 Mass. 750, 755 (1945) (other citations omitted). See also *Uliasz* v. *Gillette,* 357 Mass. at 102-103. For purposes of this discussion, we assume that, consonant with the second principle, an easement by estoppel in favor of a grantee of land shown on a recorded plan would extend to all ways shown on the plan which the grantee might reasonably have expected he would have the right to use.

Neither of the two lines of estoppel cases has any application to the facts of the present case. Both categories of cases deal with the rights of grantees or their successors in title against their grantors and their successors in title. Neither the plaintiffs nor their predecessors in title to lot six ever granted the abutting property now included in Abbott Village Estates to any person or to the town.

We are aware of no case in Massachusetts recognizing the creation of an easement on broader principles of estoppel. Some States have recognized the creation of an easement on general estoppel principles where it was found that a party engaged in conduct relating to the creation of an easement which was misleading and which was intended to induce reliance and another party changed his position to his detriment in reasonable reliance on the misleading conduct. See, e.g., *Pinkston* v. *Hartley,* 511 So. 2d 168, 169-170 (Ala. 1987); *Hester* v. *Chambers,* 264 Ark. 941, 942-943 (1979); *Collins* v. *Ketter,* 719 P.2d 731, 734 (Colo. Ct. App. 1986); *Lake Meredith Dev. Co.* v. *Fritch,* 564 S.W.2d 427, 430 (Tex. Civ. App. 1978).

Several considerations require that such a doctrine, if recognized, be narrowly applied. First, an easement is an interest in land which encumbers the unfettered right of an owner to use his land. Second, recognition of "easements by estoppel" would detract from the integrity and reliability of land records.

Although it may well be that equitable principles, even if narrowly applied, reasonably could justify the recognition of an easement by estoppel in some situations, not all of the traditional elements of an estoppel are present in this case. It is true that Barco represented the existence of the easement on the recorded plan and that it intended that the board rely upon the representation by approving the subdivision. Moreover, all of the parties in Barco's subsequent chain of title, including the plaintiffs, knew of the contents of that plan. The planning board relied upon the reference on the plan to the proposed roadway easement when it issued its release of board-imposed restrictions on the lot and permitted Barco to sell lots in the subdivision. On the other hand, the town could have required Barco to execute to it a written deed of easement and, if Barco failed to do so, could, within the one year limitations period, have brought an enforcement action under G. L. c. 41, § 81Y. The town's own regulations provided that any easement deemed by the planning board to be necessary be deeded to the town. In fact, according to testimony at trial, the current practice in the town is to enforce the regulation by having developers execute such deeds.

As the town failed to enforce its rights against Barco, it does not seem to us that fairness requires that the town's rights now be enforced against the plaintiffs. The effect on the use of their property would be significant. Anyone in their position when they purchased the property would have been reasonable, in light of the regulations, in relying on the absence of a recorded instrument conveying the easement to the town. Moreover, we doubt that the planning board's approval of the Marbleridge Estates subdivision by itself constituted the type of detrimental reliance that would give rise to an estoppel. Apart from the town, no other person appears to have relied on the proposed roadway as shown on the subdivision plan. No one asserts that there was reliance on the part of any owner of the abutting property.

In summary, however sensible it may have been for the planning board to require an easement for a proposed roadway

connecting streets in the two adjacent subdivisions, the steps taken in the circumstances shown by this record to establish the easement were insufficient to carry out that intent.

*Judgment affirmed.*