Fecteau, J.
This is an action for declaratory relief wherein the plaintiff seeks to establish rights to certain parking areas on the premises which it leases. The plaintiff has subsequently moved for judgment on the pleadings or, in the alternative, summary judgment. The pleadings submitted by the parties have been supplemented with affidavits and other materials. Therefore, pursuant to Mass.R.Civ.P. 12(c), the court has given notice to the parties that the motion will be treated as one for summary judgment under Mass.R.Civ.P. 56. For the following reasons, summary judgment is ALLOWED.
BACKGROUND
In May of 1986, there were two adjacent parcels of land in Shrewsbury. Both properties contained buildings and were part of a “shopping plaza” along Route 9. One parcel was owned by Frank Iovieno, as Trustee of the MFKT Real Estate Trust (“MFKT”). Robert A. Cole, Trustee of the Quinsigamond Plaza Trust (“Quinsigamond”) was the owner of the adjacent parcel. On or about May 8, 1986, MFKT leased its property to Quinsigamond and subsequently, both owners entered into a reciprocal lease agreement (“REA”) which allowed Quinsigamond to use the parking areas on MFKT’s land for the benefit of the Quinsigamond parcel.
In July of 1991, following the initiation of a lawsuit in Worcester District Court by MFKT against Quinsigamond, the parties entered into an Agreement for Judgment which required Quinsigamond to make certain payments on rent arrearages. Upon the failure of Quinsigamond to comply with the mandates of the Agreement for Judgment, the district court entered an execution which was served upon Quinsigamond and subsequently recorded in the Worcester District Registry of Deeds. The recording of the execution effectively seized the leased premises and evicted Quinsigamond from properly owned by MFKT.
The defendant in this case, Turnpike Really Trust (“Turnpike”), purchased the property owned by Quinsigamond in December of 1992. Turnpike and MFKT continued to share parking space and Turnpike paid a share of the utilities and costs associated with the parking area. The MFKT property was then leased to the plaintiff, Forecast Shrewsbury Partnership (“Forecast”) of which the Q Plaza Corporation is a general partner, in July of 1993. On or about September 14,1994, Forecast and Turnpike signed an access easement which granted Turnpike an easement over a portion of MFKT property for “vehicular and pedestrian ingress and egress to service a retail building on” the Turnpike property.
Following the granting of the access easement, Forecast initiated an action in the Land Court and Turnpike filed one in the Superior Court. Forecast sought declaratory relief regarding rights to the parking areas and Turnpike asked for an injunction ordering the removal of jersey barriers set up by Forecast on the MFKT property. The preliminary injunction requested by Turnpike was denied upon the stipulation that the barriers would be removed pending a decision on the merits of the case. Following that decision the parties negotiated for a settlement and, as part of the negotiations dismissed their respective actions without prejudice.
The negotiations proved fruitless and Forecast filed the present action with the Land Court on January 26, 1996. The case was transferred to the Superior Court in March, 1996 and is presently before the court on the plaintiff, Forecast’s, motion for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community *308 Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the situation is such that “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to Judgment as a matter of law. Cassesso, supra.
Issues of contract interpretation are generally a matter of law and properly before the court on a motion for summary judgment. U.S.M. Corp. v. Arthur D. Little Sys., 28 Mass.App.Ct. 108, 116 (1989). Where the words of a contract are “plain and free from ambiguity, they must be construed in accordance with their ordinary and usual sense." Edwin R. Sage Co. v. Foley, 12 Mass.App.Ct. 20, 28 (1981). The undisputed facts in this case indicate that the Reciprocal Access Easement (“REA”) between Quinsigamond and MFKT expired according to its terms in September of 1991 when the lease between those parties was terminated with the execution of a judgment against Quinsigamond.
A lessor is entitled to bring a summary process action against a lessee seeking possession of the leased premises. G.L.c. 239, sec. 1. MFKT brought a summary process action against Quinsigamond and an execution issued, was served by the sheriff, and recorded in the appropriate Registry of Deeds. Following these events, MFKT regained possession of the leased premises and the lease between MFKT and Quinsigamond was terminated. Correspondingly, having considered the plain language of the REA,[3] the easement between the parties was also terminated as well.
The REA states in section 7.01 that the easement terminated upon the expiration or termination of the lease. The defendant argues that the language which follows in section 7.02 creates an ambiguity regarding the possible termination of the easement. Specifically, the defendant points out that section 7.02 declares that the easement will “run with the land.”
An easement is created by a grant from one party to another and that grant can contain terms which govern the application of the easement. See Marden v. Mallard Decoy Club, Inc., 361 Mass. 105 (1972). Provisions of a contract, which the easement grant is for all intents and purposes, will be interpreted by the courts to avoid inconsistencies between the provisions and to give effect to their plain meaning. Educational Electronics, Inc. v. Brookline Trust Co., 2 Mass.App.Ct. 866 (1974). When clauses of a written agreement appear to conflict, the court must read them, if such an interpretation is possible, as if they are not in conflict. Truck Drivers, Chauffeurs and Helpers Union, Local 42 v. International Broth. of Teamsters of America, 482 F.Supp. 266 (D. Mass. 1979).
Given these general rules of construction, the court is confident that section 7.01 was intended to address the duration of the easement and the circumstances which would result in its termination. Section 7.02, then, was intended to address the issue of successors in interest to the original lease agreement. That is, the easement was to remain in effect for the life of the lease, regardless of whether or not the parties to the lease passed on their respective interests to a third party. Therefore, in light of this interpretation which gives effect to each clause of the grant, the defendant’s position that the easement was intended to be perpetual and to run with the land cannot be sustained.
The defendant argues, in the alternative, that the REA has been perpetuated through the conduct of the parties and that, through the principles of estoppel, the court should recognize the existence of the REA. Principles of estoppel cannot be used to perpetuate or rewrite the terms of an easement. See Patel v. Planning Board of North Andover, 27 Mass.App.Ct. 477, 481-82 (1989). The court in Patel presents a careful and reasoned discussion for limiting the application of estoppel principles to specific factual circumstances which are not present in this case. To recognize a broader concept of “easements by estoppel” would “detract from the integrity and reliability of land records.” Id. at 482-83. Moreover, the requisite elements of estoppel are not present in this case. The defendant has not been misled as to the plaintiffs position regarding the existence of an easement given the history of litigation between these parties. Additionally, the defendant has not presented this court with any evidence indicating that it has changed its position to its detriment based upon the allegedly misleading conduct of the plaintiff.[4] See id. at 482.
As the REA ended at the time when the lease between Quinsigamond and MFKT was terminated, the defendant’s only right to the MFKT property is contained in the access easement that allows for vehicular and pedestrian ingress and egress to the defendant’s property. The plaintiffs motion for summary judgment is allowed.
The defendant has filed a counterclaim alleging that the plaintiff engaged in unfair and deceptive act and practices in violation of G.L.c. 93A. Whether conduct falls within the scope of G.L.c. 93A depends upon the individual circumstances of the case. U.S.M. Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108 (1989). Not every breach of contract or illegal act rises to the level of a G.L.c. 93A violation. Walsh v. Chestnut Hill Bank and Trust Co., 414 Mass. 283, 288 (1993); Mechanics Nat’l Bank of Worcester v. Killeen, 377 Mass. 100 (1979). Massachusetts consumer protection law indicates that, in order to establish unfair and deceptive trade practices, the plaintiffs conduct must fall within some common law, statutory, or other *309 established concept of unfairness, or was immoral, unethical, oppressive or unscrupulous. Rini v. United Van Lines, Inc., 903 F.Supp. 224 (D. Mass. 1995). The record in this case is devoid of evidence which would indicate that the plaintiff has engaged in conduct proscribed by G.L.c. 93A. Therefore, summary judgment will also be allowed for the plaintiff on the defendant’s counterclaim.
ORDER
For the foregoing reasons, I ORDER that the plaintiffs motion for summary judgment be ALLOWED.

 The pertinent terms of the REA are as follows:

Article VII

Term and Succession

7.01. This Agreement shall remain in full force and effect until the expiration of earlier termination of the Lease, or a new lease created in place of the Lease, unless sooner terminated by the consent of all the Owners and the holders of first mortgage upon the fee interests in all the parcels that are subject to the first mortgages.
7.02. The rights and easements herein granted, the restrictions and obligations herein imposed and the agreements herein contained shall be rights, easements, restrictions, obligations, and agreements running with the land and shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, personal 'representatives, successors, and assigns, including, but without limitation, all subsequent grantees and all persons claiming under them, any subsequent Owners, and any person claiming under them.

 The defendant has presented no argument to this court that the REA still exists either by prescription or by implication.