Cornetta, Roberta., J.

I. INTRODUCTION

This case arises from a dispute with respect to an Agreement for Judgment entered in favor of the plaintiffs, Platinum Building & Design, Inc. (“Platinum”), predecessor in interest, Bean Porridge Farm Development Corporation (“Bean Porridge”), on May 24, 2002 in an earlier civil action between Bean Porridge and the defendants, Linda Swenson (“Swenson”), Paul Piktelis (“P. Piktelis”), and Denise Piktelis (“D. Piktelis”). The 2002 Judgment provided Platinum a perpetual easement over a portion of the road known as Braney Road Extension (“Extension”) in Millbury, Massachusetts. This matter is before the court on Platinum’s motions for summary judgment and to strike the affidavits of defendants George Boria (“Boria”), Swenson, P. Piktelis and D. Piktelis (collectively the “defendants”), as well as the defendants’ motion to vacate the 2002 judgment.[3], [4] After hearing the detailed argument of the parties, and upon careful consideration and review of the parties’ memoranda, affidavits and exhibits, the plaintiffs motion for summary-judgment is ALLOWED, the motion to strike the defendants’ affidavits is ALLOWED, and the defendants’ motion to vacate the judgment is DENIED.

II. BACKGROUND

After careful review of the pleadings, memoranda of law, affidavits of the parties, and the arguments of counsel, the undisputed facts, viewed in the light most favorable to the defendants, are as follow.
On or about December 30, 1999, Bean Porridge filed an application with the Millbury Planning Board (the “Board”) for Definitive Approval of a subdivision named Cronin Brook Heights.[5] Sole access to the Development is by way of the Extension.[6] Defendants Swenson, P. Piktelis, and D. Piktelis opposed the approval of the Development and claimed ownership rights in fee simple to that portion of Braney Road comprising the Extension. On or around July 2000, the Board sought the advice of one John R. Hucksam, Jr. (“Hucksam”) with respect to access over the Extension to the proposed subdivision. Hucksam advised that the Board condition its approval upon Bean Porridge obtaining a judicial declaration of its right to use and to improve the Extension. On April 17, 2001, Bean Porridge filed a civil action in Worcester Superior Court captioned Bean Porridge Farm Development Corp. v. Paul Piktelis, Denise Piktelis, Linda Swenson, Anthony Mangano and the Town of Millbury, Civil Action No. 01-00769 (the “Bean Porridge Action”). D. Piktelis and Swenson retained Henry Lane (“Lane”) to represent them. Thereafter, Bean Porridge filed a motion for summary judgment which was heard on October 15, 2001.[7] On that same date, a Release and Settlement Agreement (the “Agreement”) and a separate Agreement for Judgment (the “Judgment”) were executed between Bean Porridge, D. Piktelis and Swenson. The Judgment was filed with the Court on October 15, 2001. The documents which evidenced *388 the Agreement and Judgment were signed by the President of Bean Porridge, its attorney Stephen Meltzer, and Lane.[8] Neither D. Piktelis nor Swenson’s signature appear on the Agreement or the Judgment. The Agreement provided, in relevant part, that Bean Porridge tender to D. Piktelis and Swenson each the sum of $22,500.00 in consideration of the grant of a perpetual easement to use the disputed strip of land along the Extension which abutted Bean Porridge’s property. The Judgment stated that Lane would hold the Agreement in escrow until the sum of $45,000.00 was disbursed in equal shares,to defendants D. Piktelis and Swenson upon the sale of Bean Porridge’s property.[9]
The parties’joint motion for entry of judgment was allowed by the court on May 24, 2002. On or about August 29, 2002, Platinum purchased the subject property from Bean Porridge. In accordance with the Agreement, Bean Porridge forwarded funds in the amount of $45,000.00 to Attorney Lane which were then disbursed in equal amounts to D. Piktelis and to Swenson. On or about November 20, 2002, the Judgment was recorded at the Worcester County Registry of Deeds.[10] On or about the same time, Platinum commenced work to build the subdivision. On or about November 12, 2003, the Board approved the design concept for Cronin Brook Heights. Minutes from the Board’s December 8, 2003 meeting provide that “a tentative agreement has been reached with the property owners along the portion of Braney Road which abuts the development, which will allow them to integrate the three existing driveways into the new roadway.” Additionally, the Board discussed “allowing asphalt sidewalks along the portion of Braney Road that the developer is responsible for providing.”
The record before the court reveals that there were multiple attempts, spanning the period from December 2003 to June 10, 2004, to reach an agreement between the parties with respect to the integration of the Swenson and P. Piktelis driveways with the Extension. The integration agreements were never executed between Platinum and defendants Swenson and P. Piktelis. Subsequently, Platinum completed the paving and driveway integration work to the Extension in order to meet the Planning Board’s conditions of approval. On or about June 24, 2004, in an apparent attempt at self-help, defendant Boria physically blocked access to the subdivision with a bulldozer. Platinum moved for and obtained injunctive relief on July 23, 2004.

III. DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 706, 716 (1991). The mere assertion of a genuine factual dispute by the nonmoving party, “absent factual material upon which the assertion might be proved, is not sufficient to defeat summary judgment.” Massachusetts Municipal Wholesale Electric Co. v. City of Springfield, 49 Mass.App.Ct. 108, 113 (2000).

A. Motion for Relief from Judgment

Mass.R.Civ.P. 60(b) provides, in relevant part:
On motion and upon such terms as are just, the court may relieve a party or his representative from a final judgment, order, or proceeding for the following reasons:
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
(6) any other reason justifying relief from the operation of the judgment.
As a general rule, relief from judgment is sought by motion, “rule 60(b) . . . does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.” “Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments . . . [it] may not be used as a substitute for a timely appeal.” See Harris v. Sannella, 400 Mass. 392, 395 (1987).
Here, although the defendants have invoked Rule 60(b), subsections (4), (5), and (6) in the instant motion, they have conceded that they focus solely on subsection (b) (6) in the prayer for relief from judgment. Accordingly, this court shall focus its inquiry on whether there is reasonable justification for the relief other than those reasons contained in subsections 1 through 5; whether the motion has been brought within a reasonable time; and whether the defendants have demonstrated extraordinary circumstances which warrant relief. See Bowers v. Board of Appeals of Marshfield, 16 Mass.App.Ct. 29, 33 (1983); Parrell v. Keenan, 389 Mass. 809, 815 (1983), citing Murphy v. Administrator of the Div. Of Personnel Admin., 377 Mass. 217, 228 n.13 (1979). Moreover, “if cases are to *389 have finality, the operation of rule 60(b) must receive ‘extremely [meager] scope.’ ” Bowers, 16 Mass.App.Ct. at 33, citing Rinieri v. News Syndicate Co., 385 F.2d 818, 822 (2d Cir. 1967) (“[r]ule 60 is to litigation what mouth-to-mouth resuscitation is to first aid: a life-saving treatment, applicable in desperate cases”). Further, the court must have “an indication that the claim is ‘worthy of judicial investigation’ . . . raising a material question of law meriting discussion and decision, or a real controversy as to essential facts arising from conflicting or doubtful evidence.” See Berube v. McKesson Wine & Spirits Co., 7 Mass.App.Ct. 426, 433 (1979). “[W]e have recognized that. . . denial of a rule 60(b) motion based upon a claim of a lawyer’s negligence could increase court congestion ‘by replacing the dismissed action with a new action for malpractice’ . . .” See Colley v. Benson, Young & Downs Insurance Agency, Inc., 42 Mass.App.Ct. 527, 536 (1997), citing Berube, 7 Mass.App.Ct. at 431 n.10. A motion pursuant to rule 60(b) must be brought within a reasonable time, and “the determination of what constitutes a reasonable time [ ] is ‘addressed solely to the judge’s discretion.’ ” Parrell, 389 Mass. at 815. Finally, application of the principle that “litigants are properly bound by the conduct of their attorney” is “apt [ ] when the lapse of time after judgment” has been long enough to convey to the opposing party a sense of finality. See Tibbits v. Wisniewski, 27 Mass.App.Ct. 729, 733 (1989).
The defendants claim that Lane had no authority to enter into the Agreement, that he did so in derogation of the defendants’ wishes to retain fee simple ownership in the Extension, and that the defendants had no notice of the May 24, 2002 Agreement for Judgment until June 25, 2004.[11] The court declines to accept the defendants’ assertion that they had no notice of the Agreement and Judgment based upon the summaiy judgment record.[12] First and foremost, the record demonstrates that the relevant facts and applicable law “were known or knowable by the parties” at least as early as April 4, 2003 and no later than July 2003. See Roberts v. Worcester Redevelopment Authority, 53 Mass.App.Ct. 454, 461 (2001) (even if grounds for relief [ ] existed, request brought over two years later untimely). Second, the July 9, 2004 Boria affidavit provides that (1) Swenson and Piktelis each received checks in the amount of $22,500 on or about November 2, 2002;[13] (2) Boria, Swenson, and Piktelis became “aware” of some reference to a court decision on or about April 2003; (3) Boria was informed of a Waiver of Appeal filed in the case in July 2003; (4) Swenson spoke with Lane at some point in April 2003 and notified him that there were problems developing with regard to the roadway elevation “in an attempt to compensate for [ ] depth of sewer lines” installed by the Town; and (5) Lane attended Planning Board meetings at the defendants’ request in September and October 2003 in order to inform the Board that Platinum had failed to comply with certain of the Board’s conditions.
Based upon the foregoing, the court concludes that the defendants cannot negate by affidavit and argument the specific instances which occurred after the entiy of judgment on May 24, 2002. Taken as a whole, the payments tendered to Swenson and P. Piktelis in November 2002 through Lane coupled with two distinct instances when references to legal decisions or documents occurred within eight (8) months of the payments constituted notice to the defendants to further investigate their assumptions. The summaiy judgment materials further demonstrate that there was a significant amount of construction work taking place on or about the Braney Road Extension. Moreover, the Boria affidavit states that the defendants engaged in ongoing communication with Lane concerning the progress of the subdivision.[14] Platinum, by its president Robert McKie, provides countervailing assertions with respect to integrating the Swenson and P. Piktelis driveways into the improved roadway. Thus, viewing the facts in the light most favorable to the defendants, where entry of judgment in the matter occurred in May of 2002, and the defendants had notice of the same between April and July of2003, the motion to vacate the judgment is untimely. See Klimas v. Mitrano, 17 Mass.App.Ct. 1004 (1984) (motion for relief from judgment filed ten months after plaintiff became aware of dismissal). Moreover, the defendants have failed to show evidence which constitutes extraordinary circumstances upon which to grant the requested relief. See Sahin v. Sahin, 435 Mass. 396, 405 (2001) (no evidence demonstrating enforcement of judgment would be manifestly unconscionable). Accordingly, the defendants’ motion to vacate the judgment is DENIED.

B. Plaintiff’s Motion to Strike the Affidavits of Boria, Swenson, and P. Piktelis

Platinum filed the motion to strike the defendants’ affidavits pursuant to Superior Court Rule 9A(b)(3). Mass.R.Civ.P. 56(e) requires that affidavits submitted in opposition to a motion for summaiy judgment “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify as to the matters stated therein.” If an affidavit refers to another document or some portion thereof, sworn or certified copies of the document must be submitted with the affidavit. Accordingly, a motion to strike is the proper procedural device for raising the insufficiency in an affidavit submitted in opposition to a motion for summary judgment. See Fowles v. Lingus, 30 Mass.App.Ct. 435, 439 (1991) (absent motion to strike, court may, in its discretion, rely on defective affidavit). “Affidavits are not competent evidence to prove the truth of the statements they contain [] unless they come within some established exception to the hearsay rule or come within some statutoiy provision." *390 See Moran v. School Committee, Littleton, 317 Mass. 591, 595 (1945), citing Poignand v. Smith, 8 Pick. 272. “(A court] is no more bound to accept as true an uncontradicted affidavit than to believe an uncontradicted witness.” See Kahn v. Pacific Mills, 311 Mass. 588, 590 (1942), citing Germain v. Road, 297 Mass. 73, 75 (1937). Thus, statements contained in an affidavit may be “disregarded [7] because [they were] vague, non-specific, and general . . .” See O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993). Finally, “a party cannot create a disputed issue of fact by the expedient of contradicting, by affidavit statements previously made under oath [ ].” Id.

1. The Boria Affidavits

Boria’s first affidavit was executed on May 26,2005. The court declines to acknowledge the handwritten, unsworn, uncertified document, dated April 5, 1991, by which Boria claims the grant of an easement in perpetuity in his favor from P. and D. Piktelis. Moreover, the court finds unavailing the affidavits executed by P. Piktelis and D. Piktelis whereby they affirm separately an oral and written agreement by which an easement to the right of way at 38 Braney Road was granted to Boria.[15] Boria was not a party to the original litigation with Bean Porridge and cannot now assert an interest in the Braney Road Extension as a means for establishing personal knowledge and an interest in the present litigation.
First and foremost, to the extent which Boria claims knowledge based upon assisting Swenson and the Piktelis, there is nothing in the record before this court which is competent to establish that Boria was involved in any of the matters stated in either the first or the second affidavit. The court is not bound to accept Boria’s affidavit, even supported by the affidavits of P. Piktelis, D. Piktelis and Swenson, as competent evidence in this matter. To the extent that Boria references the attorney-client relationship between Lane and the other defendants, the court discerns no basis upon which to conclude Boria had any knowledge whatsoever. Further, Boria relies upon conversations he had with the other defendants in this matter as a basis for knowledge. Because those conversations would be inadmissible at trial, the court does not credit such testimony proffered by affidavit. Thus, statements which constitute opinion outside the scope of Boria’s personal knowledge are not properly considered for the purpose of summary judgment. Finally, the court concludes that Boria has attempted to create a disputed issue of material fact by filing contradictory affidavits. By affidavit dated July 9,2004, Boria states, in relevant part:
I was later informed in July of 2003, that there was a Waiver of Appeal signed by Lane on June 4, 2002, which, again, he was not authorized to sign.
On or about April 4, 2003, Swenson, [Boria] and Piktelis became aware of some reference to a Court decision.
Lane, at our insistence, attended Planning Board meetings on September 22, 2003 and October 27, 2003 and stated that the Planning Board conditions were not being complied with by the developer.
By contrast, Boria’s subsequent affidavit filed on June 24, 2005, states:
On or about April 4, 2003, Swenson, [Doria] and Piktelis became aware of some reference to a Court decision.
Swenson wrote to Lane on April 4, 2003, and informed Lane that the conditions of the Planning Board, pursuant to the Certificate of Approval of a Definitive Plan dated November 28, 2000, were not being met. He was further informed that in our conversations with Town officials, they refer to a Court Order and we were not aware of what order they were talking about. Swenson had requested copies of such alleged signed Agreement from Lane, to no avail.
On or about June 25, 2004, Swenson, Piktelis and I learned for the first time that Lane had entered into an agreement with Bean Porridge that required Swenson and Piktelis to convey the disputed property to Bean Porridge. This alleged agreement was shown to me by an official for the Town of Millbury.
Finally, by affidavit dated June 26, 2005, Boria states:
On or about June 25, 2004, Swenson, Piktelis and I learned for the first time that Lane had entered into an agreement with Bean Porridge that required Swenson and Piktelis to convey the disputed property to Bean Porridge. This alleged agreement was shown to me by an official for the Town of Millbury.
Based upon the foregoing, the court concludes that Boria’s June 24 and June 26, 2005 affidavits are inconsistent with his earlier sworn statement. Accordingly, Boria cannot negate admissions with respect to notice of earlier court decision, agreement, or order by filing subsequent contradictory affidavits. See Morrell v. Precise Engineering, Inc., 36 Mass.App.Ct. 935, 937 (1994).

2. The Swenson, D. Piktelis, and P. Piktelis Affidavits

The above-named defendants executed affidavits dated June 26, 2005, whereby each purports to confirm and adopt the statements contained in Boria’s April 21, 2005 affidavit. Once again, Mass.R.Civ.P. 56(e) requires that affidavits submitted in opposition to a motion for summary judgment “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein.” In light of these requirements, the affidavits of Swenson, D. Piktelis, and P. Piktelis must be stricken because each adopts the sworn statements of Boria whose statements were not statements based upon personal knowledge but rather those based upon information and belief. Moreover, *391 each affiant states that he or she did not see the “alleged” Release and Settlement Agreement until on or about June 25, 2004. Thus, the remaining defendants cannot, through Boria, attempt to raise an issue of disputed material fact by filing statements inconsistent with earlier affidavit testimony. Accordingly, for the above reasons as well as the court’s decision with respect to the defendant’s motion to vacate judgment, the affidavits are stricken from the record.

3. Plaintiff’s Motion for Summary Judgment

Massachusetts cases which recognize the creation of an easement by estoppel generally fall into two general categories. See Patel v. Planning Board of North Andover, 27 Mass.App.Ct. 477, 481 (1989). First, “when a grantor conveys land bounded on a street or way, he and those claiming under him are estopped to deny the existence of such street or way, and the right thus acquired by the grantee (an easement of way) is not only coextensive with the land conveyed, but embraces the entire length of the way, as it is then laid out or clearly indicated and prescribed.” See Estes v. DeMello, 61 Mass.App.Ct. 638, 643 (2004), quoting Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 677-78 (1965), quoting in turn Casella v. Sneierson, 325 Mass. 85, 89 (1949). Indeed, “(t]his rule is applicable even if the way is not yet in existence, so long as it is contemplated and sufficiently designated.” Estes, 61 Mass.App.Ct. at 643, citing Goldstein v. Beal, 317 Mass. 750, 755 (1945). Second, “where land situated on a street is conveyed according to a recorded plan on which the street is shown, the grantor and those claiming under him are estopped to deny the existence of the street for the entire distance shown on the plan.” Patel 27 Mass.App.Ct. at 482. Though not settled law in Massachusetts, some jurisdictions recognize “the creation of an easement on general estoppel principles where it is found that a party engaged in conduct relating to the creation of an easement which was misleading and which was intended to induce reliance and another party changed [its] position to [its] detriment in reasonable reliance on the misleading conduct.” Id. (citations omitted). In addition, Restatement (Third) of Property (Servitudes) §2.10 (1998) provides as follows:
If injustice can be avoided only by establishment of a servitude, the owner or occupier of land is es-topped to deny the existence of a servitude burdening the land when:
. . . the owner or occupier permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked, and the user did substantially change position in reasonable reliance on that belief. . .
At the March 4, 1967 annual meeting, the Town of Millbuiy accepted Braney Road as a public way from Grafton Street for a distance of approximately 1960 feet. It is undisputed that Platinum’s land, which consists of two tracts, abuts Braney Road and the Extension with no access to any other way, public or private. The summary judgment record demonstrates that the locus, Cronin Brook Heights, consists of two (2) parcels of land for a total of twenty-six acres which was the former Cannon property. Bean Porridge, Platinum’s predecessor in interest, received two deeds from its immediate predecessor. The language contained in the two deeds whereby Bean Porridge acquired the locus provides, in relevant part, “However, the [described property] may be bounded and described, meaning and intending to convey all of my right, title and interest in the above described premises . . . and any interest, whether in fee or as appurtenant to the premises, in any roads traversing or abutting said premises.”[16] See Frawley v. Forrest 310 Mass. 446, 451 (1941) (when grantor conveys land as bounded by a street or way, grantee acquires perpetual easement, right of passage on, upon and over it). The Millbuiy Planning Board approved the subdivision plan on November 28, 2000. The defendants and other persons opposed to the plan appealed the Board’s decision which appeal was ultimately dismissed. Thereafter, the Planning Board endorsed the subdivision plan on June 10, 2002.
The court concludes that without access to the Braney Road Extension, Platinum is otherwise reasonably landlocked. The Judgment and Declaration of Rights dated May 24, 2002 renders the earlier Memorandum of Decision and Order on Bean Porridge’s Motion for Summaiy Judgment void. As of the date the Judgment was recorded at the Worcester County Registry of Deeds, the defendants in this matter possessed constructive notice of the thirty-three-(33)-foot wide easement granted by D. Piktelis and L. Swenson to Bean Porridge and thereafter conveyed to Platinum. Additionally, D. Piktelis and Swenson acknowledge that each received the sum of $22,500.00 upon the sale of the subdivision land to Platinum. The summary judgment record reveals that the defendants remained in contact with Attorney Lane and continued to press their dissatisfaction to Lane and to the Planning Board with respect to the construction progress occurring at and around Cronin Brook Heights. Furthermore, the court concludes that the defendants were aware of the utility and roadway improvements occurring on and around the Extension and took no affirmative action to stop the same other than to illegally block the way on June 24, 2004. The defendants now have the benefit of utilities, specifically sewer lines and underground electric cables, for their properties which have been installed on Braney Road and the Extension. Moreover, the record contains affirmative evidence that the defendants in this matter allowed considerable work to proceed at significant cost to Platinum. Indeed, the subdivision has progressed to the point that a number of the homes constructed at Cronin Brook Heights have gone under agreement so that *392 requiring the developer at this late date to reconfigure and relocate its access into the subdivision would affect not only the developer but new homeowners as well, who are seen as bona fide purchasers for value relying upon those improvements now found at the site. Accordingly, the defendants permitted Platinum to use the Extension and place improvements thereon under circumstances in which it was reasonable to foresee that Platinum had substantially changed its position believing that the easement, for which D. Piktelis and Swenson were compensated, could not be revoked. Restatement (Third) of Properly (Servitudes) §2.10 (1998). The establishment and enforcement of an easement over Braney Road and the Extension is necessary to avoid injustice to Platinum and those purchasers claiming through Platinum. The defendants suffer no injustice as a result of enforcing the easement where D. Piktelis and Swenson received monetary compensation at the time Platinum purchased the locus and further the defendants have the benefit of the improvements and utilities which have been invested in the Extension thus far. Therefore, the court concludes that the plaintiff, Platinum, now holds an easement to the Braney Road Extension by estoppel.

IV. ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motion to vacate judgment be DENIED, the plaintiffs motion to strike the affidavits of the four defendants be ALLOWED, and the plaintiff s motion for summary judgment be ALLOWED.

 In addition, the defendants filed a motion pursuant to Mass.R.Civ.P. 63 seeking this court obtain authority from the Chief Justice of the Superior Court to hear the parties’ motions. This court has the authority to hear the defendants’ request for relief from judgment as the defendants have moved to vacate judgment under Mass.R.Civ.P. 60(b) which “does not limit the power of the court to entertain an independent action to relieve a party from a judgment . . .” See Colley v. Benson, Young, & Downs Insurance Agency, Inc., 42 Mass.App.Ct. 527, 528 (1997).

 Defendant Boria claims that he has an interest in this action by virtue of a handwritten document dated 1991 which is neither notarized nor recorded.

 The subdivision is now known as Cronin Heights Development (the “Development”).

 The materials submitted by the parties reveal that the twenty-six-(26)-acre parcel is bounded by open space and abuts no public or private way but for the Extension.

 The court withdrew its Memorandum of Decision and Order on the summary judgment motion after judgment was entered on May 24, 2002.

 On October 15, 2001, Lane executed a Joint Motion for Entry of Judgment as well as a Waiver of Rights of Appeal on behalf of the previously named defendants.

 On October 29, 2002, Bean Porridge issued a check in the amount of $45,000.00 made payable to Lane. It is undisputed that D. Piktelis and Swenson received those funds.

 Book 28148, page 117.

 The defendants maintain that an official from the Town of Millbury showed them the document at issue here.

 As a matter of law, once the Judgment was recorded at the Worcester County Registry of Deeds, the defendants had constructive notice of the same.

 The defendants maintain by affidavit that Swenson and P. Piktelis accepted the monies as consideration for dismissing the case. The Boria, Swenson, and Piktelis affidavits all contain the statement that, along with agreeing to dismiss the case, Bean Porridge would relocate the entrance to the subdivision.

 The court references the Boria Affidavit only as to statements which are supported by the entire summary judgment record.

 P. Piktelis executed the above-mentioned notarized affidavit on October 27, 2002, while D. Piktelis executed her witnessed, but not notarized, affidavit on June 21, 2002.

 The two tracts are described as Parcel 9 and Parcel 8 in the Millbury Assessors Map 39.