JOAN C. RITTER, trustee,[1] *vs.* DAVID L. BERGMANN & another.[2]

No. 07-P-93.

Suffolk. January 3, 2008. - July 31, 2008.

Present: DUFFLY, GRASSO, & COWIN, JJ.[3]

*Real Property,* Removal of timber. *Damages. Land Court,* Jurisdiction. *Jurisdiction,* Land Court. *Practice, Civil,* Motion to amend, Damages.

The Land Court properly had jurisdiction to adjudicate a plaintiff landowner's claim, pursuant to G. L. c. 242, § 7, for damages arising from the defendants' act of cutting down trees on the plaintiff's land wilfully and without license, where that claim was ancillary to the plaintiff's claims for declaratory and injunctive relief respecting the defendants' alleged illegal encroachments on the plaintiff's property. [299-302]

In a civil action seeking damages for the defendants' act of cutting down trees on the plaintiff's land wilfully and without license, the Land Court judge did not abuse his discretion in permitting the plaintiff, on the eve of trial, to amend her complaint to conform to the evidence by adding a claim for treble damages pursuant to G. L. c. 242, § 7, where the amendment, which did not present a new set of facts or a new theory of recovery, did not prejudice the defendants. [302-304]

In a civil action seeking damages pursuant to G. L. c. 242, § 7, for the defendants' act of cutting down trees on the plaintiff's land wilfully and without license, the Land Court judge did not abuse his discretion in awarding a restoration cost measure of damages, where diminution in market value was unsatisfactory as a measure of damages, in that the damage was not only the potential loss in the value of the land (which the plaintiff hoped to sell), but also in the loss of the plaintiff's privacy; further, the judge's finding that the cost of restoration was reasonably necessary was amply supported by the evidence. [304-307]

CIVIL ACTION commenced in the Land Court Department on October 30, 2002.

The case was heard by *Keith C. Long,* J., and a motion to alter or amend the judgment was also heard by him.

---

[1] Of the Birch Knoll Trust.

[2] Sherri R. Bergmann.

[3] Justice Cowin participated in the deliberation on this case prior to his retirement.

*Michael J. O'Brien* for the defendants.

*Diane C. Tillotson* for the plaintiff.

DUFFLY, J. At the heart of this appeal is a decision of a judge of the Land Court to award treble damages to the plaintiff landowner on her claim that the defendants cut down trees on the plaintiff's land. The judge found that the defendants, David Bergmann and Sherri Bergmann (the Bergmanns) had wilfully cut down the trees and calculated the damage to the plaintiff, Joan C. Ritter, trustee of the Birch Knoll trust (Ritter), to be in the amount of $43,594, and trebled damages under G. L. c. 242, § 7, to $130,782.[4]

In this appeal, the Bergmanns assert that: (1) the Land Court lacks subject matter jurisdiction to award damages pursuant to G. L. c. 242, § 7; (2) even if there is jurisdiction, the trial judge abused his discretion in permitting Ritter to amend her complaint on the eve of trial to add a claim under § 7; and (3) restoration cost was not the proper measure of damages. We affirm.[5]

1. *Summary of findings of fact and decision.* Ritter and her husband, Sherwin Ritter, own a home at 195 Common Lane, Beverly (also described as lot 10 on a plan of the land). The Bergmanns live at 211 Common Lane, also known as lot 12. In between these two lots lies an undeveloped parcel, lot 11, owned by Ritter as trustee of the Birch Knoll Trust. The Ritters' and Bergmanns' homes are both accessed by a common driveway located on lot 11.

Lot 11 is a buildable lot consisting of approximately five acres that, at the time of trial, was vacant and wooded except in areas where trees and brush had been removed by the Bergmanns. The

---

[4]General Laws c. 242, § 7, provides:

"A person who without license wilfully cuts down, carries away, girdles or otherwise destroys trees, timber, wood or underwood on the land of another shall be liable to the owner in tort for three times the amount of the damages assessed therefor; but if it is found that the defendant had good reason to believe that the land on which the trespass was committed was his own or that he was otherwise lawfully authorized to do the acts complained of, he shall be liable for single damages only."

[5]The Bergmanns also appealed from the denial of their motion to alter or amend the judgment. We deem waived any arguments raised in that motion that were not presented in this appeal. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

driveway that serves lots 10 and 12 has three sections: a portion that extends in a northerly direction from Common Lane, a public road, to a point where it divides; a spur that proceeds right from that point, in a northeasterly direction, to the Ritters' house; and another spur that proceeds left from that point, in a northwesterly direction, to the Bergmanns' house. The easement documents provide that the respective owners of lots 10, 11 and 12 have responsibility each to pay an equal share of the costs of repair and maintenance, as well for "[p]lanting/[t]ree [m]aintenance" including "the preservation of planting and trees." The documents specifically also provide that Ritter, as the owner of lot 11, "shall have the right to enforce the obligation of the owner of [lot] 12 to repair and maintain the land on the easement area to the extent required hereby so as to provide and maintain the area in its most natural state and use for the owner of [lot] 11."

In the spring and summer of 2002, the Bergmanns cut down many trees, damaged others, and excavated a substantial area on lot 11 in areas both to the north of the driveway, leading to their house, and to the south. The judge specifically did not credit the Bergmanns' claims that they believed the affected land to be theirs, finding that the Bergmanns, who had had a survey done at the time of the purchase of their lot in 1993, knew they had built their house very close to the lot line and that David Bergmann knew where the lot line was. He found that the Bergmanns engaged in the tree removal and excavation activities "willfully, and without the Bergmanns' having good reason to believe that the land was theirs or that their activities were otherwise lawfully authorized."[6]

The judge awarded damages to Ritter as compensation for the Bergmanns' illegal tree clearing. The crux of the damages phase of this case was whether damages should be calculated on the basis of the diminution in the fair value of lot 11 resulting from

---

[6]Other claims involving placement of an electrical transformer and planting within the easement area were found to have been authorized by the terms of the easement. The Bergmanns were ordered to remove pavement they had installed outside of the sixteen-foot wide easement area, as well as the underground sprinkler system, rubble wall, hedge, and encroaching part of the lawn. A trampoline and basketball hoop put on lot 11 by the Bergmanns remained in place until just before trial. Only the tree cutting on lot 11 is at issue in the present appeal.

the Bergmanns' activities or on the basis of replacement cost and restoration.

The trial judge concluded that, on the evidence, the proper measure of damages was the cost to Ritter of restoring her land to a reasonable approximation of its former condition. He found that one area affected consisted of approximately 4,000 square feet of land north of the Bergmanns' driveway that formerly had been heavily wooded with mature trees and saplings. The Bergmanns, intending there to construct a swimming pool and poolhouse, had cleared it of "many trees" — all of the trees had been removed from an approximately 800 square foot excavated area, and outside of the excavation many trees were either cut down or heavily damaged, including a white pine 25.5 inches in diameter. The judge found that another affected area within lot 11 located south of the Bergmanns' driveway (approximately 1,100 square feet in size) also had been, prior to the tree clearing activities carried out by the Bergmanns, a heavily wooded area, with a combination of evergreens and hardwoods. The judge determined the "restoration" and "replacement cost" damages to be $43,594. This amount included costs associated with site preparation, individual selection and planting of the trees, and a one-year warranty on each tree.

Given his finding that the Bergmanns had, in the language of c. 242, § 7, acted "wilfully" and "without license," in cutting down or destroying the trees, the judge awarded Ritter treble damages under that statute. The Bergmanns' appeal challenges the Land Court judgment on both substantive and procedural grounds.

2. *Discussion.* a. *Jurisdiction.* We reject the Bergmanns' contention that the Land Court lacked jurisdiction to adjudicate Ritter's claim under G. L. c. 242, § 7, and conclude that the Land Court properly adjudicated the § 7 claim because it was ancillary to the plaintiff's claim for declaratory and injunctive relief respecting the alleged illegal encroachments on lot 11.

We begin by noting that pursuant to G. L. c. 185, § 1(*k*), the Land Court and Superior Court have concurrent jurisdiction of "matters cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved."

See *Senior Hous. Properties Trust* v. *HealthSouth Corp.*, 447 Mass. 259, 263 n.11 (2006).[7]

General Laws c. 242, which is entitled, "Waste and Trespass," falls within the title of the General Laws designated, "Remedies Relating to Real Property." Nothing in G. L. c. 242, § 7, nor in any other section of c. 242, for that matter, suggests that the Land Court does not have jurisdiction to consider claims under § 7, where other principles of law would permit such consideration. This is in contrast, for example, to petitions for partition of land, as to which the "Probate [and Family Courts] and the [L]and [C]ourt shall have concurrent jurisdiction," G. L. c. 241, § 2; and to actions brought pursuant to G. L. c. 93A, which may only be brought "in the [S]uperior [C]ourt, or in the [H]ousing [C]ourt."[8] G. L. c. 93A, § 9(1).

The complaint in this case was in two counts, both based on the Bergmanns' actions of cutting trees and bushes on Ritter's property without her permission and treating her property as their own: count I, for trespass, sought damages; count II, for declaratory and injunctive relief, sought a declaration of the parties' rights to lot 11, and orders enjoining the trespass and restoring the property to its prior condition. These claims were within the Land Court's jurisdiction to decide, and the defendants do not suggest otherwise.

---

[7]Under G. L. c. 185, § 1(*k*), the Land Court has concurrent jurisdiction with the Superior Court of "[a]ll cases and matters of equity cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved, including actions for specific performance of contracts."

The Superior Court has exclusive original jurisdiction over

> "civil actions for the foreclosure of mortgages, and of real and mixed actions, except those of which the [L]and [C]ourt or [D]istrict [C]ourts have jurisdiction, of complaints for flowing lands, and of claims against the [C]ommonwealth. Except as otherwise provided by law, the court shall have original jurisdiction of civil actions for money damages. The actions may proceed in the court only if there is no reasonable likelihood that recovery by the plaintiff will be less than or equal to $25,000, or an amount ordered from time to time by the [S]upreme [J]udicial [C]ourt. Where multiple damages are allowed by law, the amount of single damages claimed shall control."

G. L. c. 212, § 3.

[8]"The divisions of the [H]ousing [C]ourt department shall have common law and statutory jurisdiction concurrent with the divisions of the . . . [S]uperior

Because the Land Court could properly entertain the requests for equitable and declaratory relief, it also had jurisdiction to award damages in this case. "[T]he court which hears the bill for declaratory relief has jurisdiction to grant the further relief . . . . This jurisdiction may, in a proper case, include the award of damages." *Essex Co.* v. *Goldman,* 357 Mass. 427, 434 (1970) (where Land Court judge issued final decree regarding obligations of defendants to pay rent and right of plaintiff to declare forfeiture if they failed to do so, he wrongly declined plaintiff's request to render judgment for rent). As was said in the *Essex Co.* decision, "a final decree in a bill for declaratory relief should determine 'the whole controversy between the parties and should . . . [leave] for future determination no issue reasonably raised by the bill and prayers for relief, including the prayer for general relief.' " *Ibid.,* quoting from *Vesce* v. *Gottfried,* 353 Mass. 568, 569 (1968). See also *McCarthy* v. *Lane,* 301 Mass. 125, 127, 131 (1938) (Land Court had jurisdiction over suit for damages related to temporary trespass of wrongful encroachment on land).

Our courts have also awarded damages where equitable relief was sought on a complaint brought in equity. See *Levi* v. *Worcester Consol. St. Ry.,* 193 Mass. 116, 118-119 (1906) (award of damages was appropriate relief where claim for restoration of easement would subject defendant to "great inconvenience and loss"); *Loughlin* v. *Wright Mach. Co.,* 273 Mass. 310, 316 (1930) (money damages awarded by Superior Court in suit for injunction related to trespass on land); *George* v. *Coolidge Bank & Trust Co.,* 360 Mass. 635, 641 (1971) ("The bill of complaint prays for general relief, and a court of equity, once it has taken jurisdiction over a cause, may award damages which arise out of the wrongful conduct"); *Sims* v. *Mason,* 361 Mass. 881, 881 (1972) ("A court of equity may fail to grant specific relief and retain a case for the assessment of damages").

The overriding principle applicable here is that "[t]he courts of the Commonwealth constitute a single system for the administration of justice in conformity to law, promptly, and without delay." *Thayer* v. *Shorey,* 287 Mass. 76, 80 (1934).[9] Absent statutory provisions that repose exclusive original jurisdiction

[C]ourt department of all crimes and of all civil actions . . . . of chapter ninety-three A . . . ." G. L. c. 185C, § 3.

[9]Even were we to accept the Bergmanns' contention that the Land Court

over a claim in another court, "[w]here the parties have been brought before a court of competent jurisdiction, their controversy so far as practicable ought to be completely and finally disposed of." *Ibid.*

The authority of the Land Court to award damages on a tort-based theory being clear where damages are ancillary to claims related to any right, title, or interest in land, and in the absence of any language in G. L. c. 242, § 7, prescribing jurisdiction in a particular department of the trial court, the statute is better construed as dictating the measurement or determination of damages than as limiting the Land Court's jurisdiction to award them.

b. *Motion to amend.* Alternatively, the Bergmanns assert that even if the Land Court had jurisdiction to adjudicate Ritter's claim under § 7, the judge abused his discretion when he granted Ritter leave, on the first day of trial, to amend her complaint to conform to the evidence, Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974),[10] by adding a claim for treble damages under § 7.

Whether filed pursuant to Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974), or rule 15(b), "a motion to amend should be allowed unless some good reason appears for denying it." *Hamed* v. *Fadili*, 408 Mass. 100, 105 (1990), quoting from *Castellucci* v.

___

was without jurisdiction, such a conclusion would not be fatal to the judgment. The Chief Justice for Administration and Management could cure any such defect, nunc pro tunc, under G. L. c. 211B, § 9(*xxi*). See *Steele* v. *Kelley*, 46 Mass. App. Ct. 712, 725 (1999).

[10]No argument has been made that the amendment was not properly brought pursuant to Mass.R.Civ.P. 15(b), as compared with Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974). Rule 15(b) provides:

"Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974).

*United States Fid. & Guar. Co.*, 372 Mass. 288, 289 (1977).
Prejudice to the nonmoving party "is to be considered in regard
to a motion to amend filed under both sections." *Hamed* v. *Fadili*,
*supra.* No prejudice has generally been found to exist where the
amendment does not present a new set of facts or a new theory
of recovery. See, e.g., *Goulet* v. *Whitin Mach. Works, Inc.*, 399
Mass. 547, 551 (1987) (where complaint alleged that defendant
negligently manufactured or designed machine, complaint "impli-
citly alleged breach of implied warranty of merchantability,"
although those words were not used, and amendment to add
count based on breach of implied warranty of merchantability
should have been allowed); *Reddish* v. *Bowen*, 66 Mass. App. Ct.
621, 629-630 (2006) (amendment was not prejudicial where it al-
leged no new facts but "merely recited facts already well rehearsed
between the parties and asserted that those facts also amounted to
a violation of G. L. c. 93A by operation of G. L. c. 142A, § 17").
Compare *Hamed* v. *Fadili*, *supra* at 105 (abuse of discretion to
allow amendment that added "theory of fraud in the inducement,
which stated an entirely different theory of liability from either
the plaintiff's breach of contract claim or his initial fraud claim"
that had been dismissed for failing to state fraudulent acts with
particularity); *Castellucci* v. *United States Fid. & Guar. Co.*, *su-
pra* at 291-292 (trial imminent and amendment would substitute
"markedly" new theory).

As we have said, count I of Ritter's complaint sought damages
on the basis of allegations that the Bergmanns cut down trees
on Ritter's property without her permission and treated Ritter's
property as their own. This constituted sufficient notice to the
Bergmanns of a claim under c. 242, § 7, such that an amendment
would not prejudice the Bergmanns. The evidence required to
establish entitlement to treble damages provided by § 7 was no
different than what Ritter had alleged in her complaint as the
basis for her claim of trespass: the tree cutting was done intention-
ally and without reasonable basis to believe that the trees stood
on land owned by the Bergmanns or that Ritter had given them
permission to do so. The knowing and intentional act of cutting
down the trees described by the complaint constitutes the wilful
conduct that gives rise to liability under § 7, and Ritter was not
required to specifically allege that the Bergmann's conduct was

"wilful." See *Palmer* v. *Davidson*, 211 Mass. 556, 558 (1912) ("if [defendant] intentionally cut down these trees he cut them down wilfully within the meaning of the statute. . . . [The jury] were [correctly] instructed that the word 'wilfully is used in the sense here of one going upon the land of another and doing it consciously, doing it intentionally,' 'in contradistinction to casual and involuntary' "). In the circumstances, the Bergmanns had "full notice of the cause of action which would entitle the plaintiff to treble damages" under the tree cutting statute. *Snelling* v. *Garfield*, 114 Mass. 443, 444-445 (1874) (where complaint alleged that defendant "wilfully cut down and took and carried away" two trees, "treble damages given by the statute need not be specially claimed in the declaration").

The Bergmanns make no argument that their defense to the original claim — that they believed the property was theirs — was altered as a result of the amendment. "[I]t is [also] worthy of note that [the Bergmanns] did not move to continue the ongoing jury-waived trial after the complaint was amended." *Reddish* v. *Bowen*, 66 Mass. App. Ct. at 631, citing *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct. 346, 353-354 (1978) (no prejudice where, after trial judge allowed motion to amend complaint to add new claim, defendant failed to move for continuance to provide sufficient time to prepare its defense to new claim). The judge did not abuse his discretion in allowing the amendment to the complaint.

c. *Measure of damages for illegal tree clearing.* As did the defendants in *Glavin* v. *Eckman*, 71 Mass. App. Ct. 313, 317 (2008), the Bergmanns maintain that the judge erred in awarding "a restoration cost measure of damages, rather than damages measured by the value of the timber wrongfully cut, or by the diminution in market value of the property as a result of the cutting." *Ibid.*, citing *Davenport* v. *Haskell*, 293 Mass. 454, 456-457 (1936), and *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 643 (1983). They argue specifically that the trial record lacked the proper foundation, or "predicate," necessary for the judge to apply a measure of damages based on the cost of restoration, contending that the plaintiff's evidence did not prove an adequate, "valid personal reason" justifying application of the restoration cost approach here, where Ritter planned to sell the lot adjacent to the Ritter home, and that the judge's finding to the contrary is clearly erroneous.

Although we conclude that the judge's finding was not erroneous, we begin our discussion by observing that the decision in the *Glavin* case does not require that there be a personal reason to support utilizing restoration cost as a measure of damages. That case stands for the broader proposition that where "the value of the timber cut is negligible, or the diminution in value of the property owing to the cutting is minimal or nonexistent," *Glavin* v. *Eckman, supra* at 318, a different measure of damages may be needed to compensate the plaintiff and to deter the wrongful cutting:

> "[T]o limit damages to these measures would encourage, rather than deter, wrongdoers from engaging in self-help in circumstances such as when an ocean or other view is desired. The timber wrongfully removed may amount to no more than a single tree; and its removal may even improve, not diminish, the market value of the property. Yet the wrongful cutting may represent a significant loss to the property owner and a significant gain to the wrongdoer even where the value of the timber cut is negligible, or the diminution in value of the property owing to the cutting is minimal or nonexistent. So to limit the damages would permit a wrongdoer to rest assured that the cost of his improved view would be no more than treble the value of the timber cut even where the change wrought to his neighbor's property by the wrongful cutting, as here, is significant. The statute does not so confine a property owner's redress. for the wrongdoing of an overreaching neighbor."

*Ibid.*

It makes no difference to the outcome here that the plaintiff in *Glavin* had no desire to sell the property on which had stood the ten mature oak trees that the defendant cut down, whereas Ritter did plan to sell lot 11. In *Glavin*, the plaintiff's lot was adjacent to the lot on which his house stood and "his plan was to hold on to the lot and utilize its mature oak trees to provide shade for a pond he planned to create from the existing wetlands, and as a backdrop to a tranquil view from his house lot." *Id.* at 319.

Here, the damage to the Ritters that resulted from the cutting down of trees on the lot adjacent to their home was not only the

potential loss in the value of the land that they hoped to sell, but the loss of their own privacy — regardless of whether lot 11 was sold or retained. As the judge found, the Ritters "hope to sell [l]ot 11, and the buyer will almost certainly build a residence upon it. Privacy, and shielding from neighboring homes, is not only a present concern to the Ritters, but will be even more of a concern in connection with that sale. Every bit of shielding is valuable, and its loss in any part of the lot — particularly in the area near a neighboring home (e.g., the Bergmanns') — is significant. . . . The buyers of Lot 11 may wish to site their house, or an accessory structure, in such a way that the loss of tree coverage in [the affected areas] removes a material degree of privacy that would otherwise be there."[11] This finding is amply supported by the evidence.

There was evidence that, prior to the tree cutting, an ideal home site on lot 11 would have been "farther south from [the Ritters'] home so that it wouldn't be in [their] face." In order to access their home, the Ritters must traverse lot 11 on the driveway as it passes by the denuded areas of the lot. The Ritters' privacy concerns are also reflected in the easement documents which provide that the respective owners of lots 11 and 12 share responsibility for "Planting/Tree Maintenance" including "the preservation of planting and trees," and that the owner of lot 12 is required to maintain the easement area on lot 11 "in its most natural state."[12]

Based on the evidence, the judge concluded that "the Bergmanns' testimony regarding lot 11's allegedly de minimis loss

[11]In a memorandum and order denying the Bergmanns' motion to alter or amend the judgment, the trial judge stated that, as he had explained in his decision, he "did not believe the defendants' expert when he testified that the damage for the cutting and clearing was de minimis, and [the judge] relied on the totality of the evidence regarding the lot, the privacy afforded by its woods, the value of that privacy to prospective purchasers in this exclusive suburban area, the location, type, and extent of the damage caused by the defendants, the loss of privacy (potentially affecting the siting of a residential structure on the lot) caused by the defendants' cutting, clearing and excavation, and the plaintiff's intention to market and sell the property."

[12]The judge's findings make reference to these provisions in the driveway easement. In addition, the judge found that the driveway easement agreements "forbid the cutting of trees, limbs, bushes, branches or disturbances of the land [on lot 11] without the written approval of the owner of Lot 12 [the Ritters] [*sic*]." While the reference to the Ritters as the owners of lot 12 is not accurate (the Bergmanns own lot 12), it is likely that the reference to "Lot 12" was

in fair market value from their cutting and clearing is unrealistic and not a fair measure of the damage they have caused," and that the cost of restoration was reasonably necessary in light of the damage inflicted, and was "also well in proportion to the true damage suffered." The judge's conclusion was correct in light of the decision in *Glavin*, stating that market value is one way of measuring damages but "does not in all cases afford a correct measure of indemnity." *Glavin* v. *Eckman*, 71 Mass. App. Ct. at 318, quoting from *Trinity Church* v. *John Hancock Mut. Life. Ins. Co.*, 399 Mass. 43, 48 (1987). Replacement or restoration costs are also appropriate "where diminution in market value is unavailable or unsatisfactory as a measure of damages." *Ibid.* The judge did not abuse his broad discretion in considering evidence other than that of fair market value in determining the amount of damages.

"When applying a restoration cost measure of damages, a test of reasonableness is imposed." *Glavin* v. *Eckman*, *supra* at 319. We do not agree with the defendants that the damages award was "unreasonable, given the relatively small amount of encroachment, the 2.5 multiplier applied to the base cost of the trees and the trebling of damages." The judge was within his discretion to credit Ritter's expert that "the 'installed cost' for the replacement trees is 2.5 times their wholesale price, and that such pricing . . . is standard in the industry." The judge's finding that the cost of restoration was reasonably necessary was amply supported by the evidence. As to the trebling of damages, this " 'ineluctably flows from the plain language of the statute' . . . , and does not render the damages unreasonable." *Id.* at 322, quoting from *Brewster Wallcovering Co.* v. *Blue Mountain Wallcoverings, Inc.*, 68 Mass. App. Ct. 582, 608 (2007).

*Judgment affirmed.*

---

the result of a scrivener's error, and that "Lot 11" was intended. The limited utility easement burdening lot 11 was to benefit lot 12; the owners of lot 12 were responsible under the easement document for any damage to the land of lot 11, and "[t]he owner of [lot] 11 shall have the right to enforce the obligation of the owner of [lot] 12 to repair and maintain the area in its most natural state and use for the owner of [lot] 11." Neither the trial judge's decision, nor ours, depends on this reading of the provision.