The defendants appeal from a "Judgment After Rescript" issued by a judge of the Land Court ordering Spirit Realty Trust (Spirit), and Richard Buccheri, Sr. (Richard) personally, to pay damages for trespass and trespass to trees based on damage to the plaintiffs' property located at 1250 Bedford Street in Abington. This is the second time this case has been before us. In a 2016 memorandum and order issued pursuant to our rule 1:28, a panel of this court affirmed a portion of a Land Court judgment that the plaintiffs acquired title by adverse possession to certain disputed areas along the boundary between 1238 Bedford Street, owned at the relevant time by Spirit, and the plaintiffs' property.[6] Owens v. Buccheri, 89 Mass. App. Ct. 1115 (2016) (Owens 1 ). The panel vacated, however, the portions of the judgment dismissing the plaintiffs' claims for trespass and trespass against trees. The trial judge had concluded that the plaintiffs could not recover for these claims because they had not definitively established their title before those trespasses occurred. Ibid. The panel held that once the statutory period for adverse possession had run, the plaintiffs became the lawful, actual possessors and the new "real owners" entitled to bring a claim against even the record title owner, because "the [plaintiffs'] actual, open, and notorious use of the land would or should have put any observer, including the record title owner, on notice of the adverse possession and the possessor's accompanying rights." Ibid. The panel remanded the case "for further proceedings ... to determine liability and what, if any, damages are appropriate." Ibid.
On remand, due to the retirement of the trial judge, a different judge reviewed the existing evidence, made additional findings, and awarded total damages of $51,427 for trespass and trespass to trees, plus interest and costs.[7] Based on his personal involvement in the actual trespass and removal of trees, the remand judge also found Richard personally liable to the plaintiffs. We affirm.
Background. Briefly, at the time of the events in issue, Spirit owned the property located at 1238 Bedford Street, which abuts and shares a sideline boundary with 1250 Bedford Street, owned since 1969 by the plaintiffs.[8] Since the 1950s, the plaintiffs' property has been improved with a home, garage, and lean-to.[9] The first judge and the remand judge found that in 2008, in an effort to develop its property, Spirit cleared the trees and a stone wall in the disputed area along the plaintiffs' driveway. At that time, Richard was the supervisor of permitting and construction activities for Spirit, and the remand judge found that Richard was actively involved in clearing the disputed property. Richard was not a trustee of Spirit when the clearing occurred. See note 4, supra. In Owens I, it was established that the area cleared by Richard and Spirit, although located on Spirit's side of the boundary line, was owned by the plaintiffs, who had acquired the area through adverse possession. The remand judge noted that in order to prove a trespass, the plaintiffs had to "prove that (1) they had actual possession of the property, and (2) Spirit Realty's entry was intentional and illegal," and he then found that the plaintiffs had met their burden. The judge awarded the plaintiffs $13,545 on their trespass claim for removal of a fieldstone wall and $37,882 on their trespass to trees claim.
Discussion. A. Trespass claim against record owner by adverse possessor. On appeal, the defendants renew their legal argument that damages cannot be assessed against the record owner of land for trespass occurring before an adverse possessor establishes legal title or at least communicates a claim of title. We need not dwell on this issue because in Owens I, as noted above, a panel of this court rejected the defendants' argument and concluded that an adverse possessor may recover damages notwithstanding the fact that they had not claimed or proven title prior to the trespass by the record owner. The panel's decision constitutes the law of the case on this legal issue. "The 'law of the case' doctrine reflects [the] court's reluctance 'to reconsider questions decided upon an earlier appeal in the same case.' " King v. Driscoll, 424 Mass. 1, 7-8 (1996), quoting from Peterson v. Hopson, 306 Mass. 597, 599 (1940). "An issue 'once decided, should not be reopened unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.' " Id. at 8, quoting from United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.), cert. denied, 502 U.S. 862 (1991). The defendants make no argument that any of these circumstances are present in this case; there was no new trial, no contrary controlling authority has intervened, and there has been no showing of manifest injustice. Rather, the defendants simply seek to distinguish cases relied on by the panel in Owens I and argue that the position the panel took was erroneous as a matter of law. Those arguments could have been presented in a petition for further appellate review or for rehearing but are not appropriate in this postremand appeal.
B. Fieldstone retaining wall. As to liability for trespass, the defendants do not deny that they trespassed on the disputed property and cleared it of trees. They do deny that Spirit removed a fieldstone wall and contend the "weight of the evidence" supports a finding that the wall had been removed long before their excavation. They argue the trial judge erred in concluding otherwise because he credited testimony of the plaintiffs and ignored testimony of the defendants as well as photographs of the disputed area. To the extent this factual finding, made by the trial judge before the appeal in Owens I, is even open to attack in this appeal, the judge made a credibility determination on conflicting evidence. Where testimony conflicts, "[c]redibility determinations ... lie exclusively within the province of the fact finder ... who is free to believe one witness and disbelieve another." Okoli v. Okoli, 81 Mass. App. Ct. 371, 379 (2012), quoting from Palmer v. Murphy, 42 Mass. App. Ct. 334, 343 (1997). We will not disturb the judge's credibility determinations.[10] Ibid.
C. Damages award. The defendants did not present their own expert witnesses on damages at trial but argue that the plaintiffs did not adequately prove their damages because their expert extrapolated from the number and types of trees in the undisturbed woods in the back of the property to determine how many and what kinds of trees had been removed from the side of the driveway. The defendants insist the plaintiffs' expert should have used available pictures of the disputed area, particularly exhibit 23. The plaintiffs' expert testified that the entire area was not shown in the photographs. When the trial judge allowed exhibit 23 in evidence, he noted that thirty to forty percent of it is darkness and although he was inclined to accept it in evidence, he was not inclined to give it much weight. It was not unreasonable, therefore, for the expert to extrapolate from existing nearby woodlands. He concluded fourteen trees of varying types and diameters were removed and gave a forty percent discount for the poor quality of the trees in the area. The expert's analysis was largely consistent with the method approved in Ritter v. Bergmann, 72 Mass. App. Ct. 296, 307 (2008), and cases cited. We cannot conclude on this evidence that the remand judge erred in crediting the expert's testimony.
D. Richard's personal liability. Without citation to any authority, the defendants contend that Richard cannot be held personally liable for any of the damages incurred by the plaintiffs in the absence of evidence that he acted outside the scope of his capacity as construction supervisor of Spirit. The argument fails to rise to the level of adequate appellate argument and we do not consider it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011) ; Cameron v. Carelli, 39 Mass. App. Ct. 81, 85-86 (1995). Moreover, to the extent the defendants contend Richard's liability stems from his status as the current trustee of Spirit, it is clear from the remand judge's findings that Richard's liability does not arise from his status as trustee; it arises from his personal conduct in physically trespassing on the plaintiffs' property and actively participating in the clearing and excavation of the area. The defendants do not direct any argument with appropriate legal authority to Richard's personal conduct.
E. Attorney's fees and costs. Finally, the plaintiffs contend this appeal was frivolous and have requested their attorney's fees and double costs of this appeal pursuant to Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979). Whether an appeal is frivolous is left to the "sound discretion of the appellate court." Glorioso v. Retirement Bd. of Wellesley, 401 Mass. 648, 652 (1988). "We are hesitant to deem an appeal frivolous and grant sanctions except in egregious cases." Symmons v. O'Keeffe, 419 Mass. 288, 303 (1995). Here, while we consider the defendants' arguments unpersuasive, we do not consider them frivolous. Accordingly, the plaintiffs' request for attorney's fees and double costs under Mass.R.A.P. 25 is denied.
Judgment affirmed.

The parties agreed that the disputed area is approximately twelve feet wide by 185 feet deep from the street to the rear of the property.

The defendants were not present at a postremand status agreement conference at which the judge and the plaintiffs agreed no additional evidence would be heard to decide the issues on remand.

In 2008, when the events at issue occurred and this action was commenced, Spirit owned the property at 1238 Bedford Street and was the original defendant, along with the Buccheris. In 2011, the property was transferred to David and Rosa Chu, as trustees of the 1238 Bedford Street Realty Trust and a motion to substitute was allowed.

In 2010, Lawrence M. Owens and Patricia A. Owens transferred their property into the LAMO 2010 Realty Trust; they serve as trustees of that trust.

Contrary to the defendants' contention, the photographs reproduced in the appendix do not compel a conclusion that the wall had been removed before the defendants began their excavation. Indeed, as the trial judge noted when he admitted the photographs in evidence, the photographs were dark and entitled to little weight.