O'BRIEN vs. POWERS, MISC 19-000205

































 
 NANCY O'CONNELL O'BRIEN, TRUSTEE OF HARBOR SIDE REALTY TRUST, Plaintiff, v. RICHARD E. POWERS, Individually and as TRUSTEE OF CORNER OF FRANCES AVENUE NOMINEE TRUST, ELIZABETH R. POWERS, Individually and as TRUSTEE OF LOT FOUR FRANCES NOMINEE TRUST, ROBERT H. AMENT as TRUSTEE OF CORNER OF FRANCES AVENUE NOMINEE TRUST, and ELIZABETH J. POWERS, as TRUSTEE OF LOT FOUR FRANCES AVENUE NOMINEE TRUST, Defendants
 MISC 19-000205 
 JULY 23, 2021
BARNSTABLE, ss.
SPEICHER, J.
DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT














 The plaintiff, the owner of property at 241 Scranton Avenue in Falmouth, on which the plaintiff has constructed a not-yet-completed single-family dwelling, claims various rights with respect to three abutting lots owned by the defendants. These include claims for an easement or right of way over portions of two of the abutting lots to access Francis Avenue, a private way on which the plaintiff's property does not abut, a claim regarding potential uses of the defendants' lots, and a tort claim for construction of a "spite fence." The defendants have filed related counterclaims, including a claim for trespass to trees pursuant to G. L. c. 242, § 7, and a nuisance claim. 





 Specifically, the plaintiff, in her First Amended Complaint, claims, in Count I, an implied easement over the defendants' Lots 3 and 4; [Note 1] in Count II, an easement by estoppel; in Count III, an "easement by Derelict Fee Statute, G. L. c. 183,58"; in Count IV, a claim for a "private nuisance spite fence G. L. c. 29 [sic] § 21"; and in Count V, a claim for interference with an easement over the alleged implied easement area and a view easement by erection of a "spite fence" alleged to consist of trees along the boundary between Lots 1 and 2. Finally, Count VI makes a claim pursuant to G. L. c. 240, § 14A seeking a declaration that the defendants' lots have been merged for zoning purposes. 





 The defendants have filed counterclaims for declaratory relief, seeking a determination that Swift Avenue is a "paper street" that has never existed on the ground; for trespass to trees pursuant to G. L. c. 242, § 7; and for private nuisance with respect to the unfinished building on the plaintiff's property. 





 The defendants filed a motion for summary judgment seeking judgment in their favor on Counts I through V of the First Amended Complaint, and the plaintiff filed a cross-motion claiming she is entitled to judgment as a matter of law on the claims in the First Amended Complaint, and seeking dismissal of the defendants' counterclaims. A hearing on the pending motion and cross-motion was held on April 7, 2021. 





 For the reasons stated below, the defendants' motion for summary judgment on the plaintiff's claims for recognition of an easement by implication, by estoppel, or pursuant to the Derelict Fee Statute, G. L. c. 183, § 58 will be ALLOWED; the plaintiff's claim for declaratory relief pursuant to G. L. c. 240, § 14A will be DISMISSED; and the parties' remaining claims and counterclaims, all sounding in tort, will be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. 





FACTS 





 The following material facts are found in the record for purposes of Mass. R. Civ. P. 56, and are undisputed for the purposes of the pending motions for summary judgment: 





1. Plaintiff Nancy O'Connell O'Brien, in her capacity as trustee of Harbor Side Realty Trust, owns a parcel of land with an address of 241 Scranton Avenue in Falmouth and known as Lot 1 on Scranton Avenue in Falmouth, Barnstable County ("Lot 1") pursuant to a deed from Robert C. Howard, Jr. dated June 30, 1995, and recorded on the same day at the Barnstable County Registry of Deeds ("Registry") in Book 9734, Page 014. 





2. In the plaintiff's deed, Lot 1 is described as bounded northeasterly by land of the town of Falmouth, southeasterly by Scranton Avenue, a public way, southwesterly by Lots 2 and 3 on a certain plan, and northwesterly by Lot 4 on the same plan. 





3. The plan referred to in the plaintiff's deed, which is also the plan by which Lot 1 was created, is identified in the deed for Lot 1 as a plan entitled "Plan of Land of Evelyn Howard Reid in Falmouth, Mass., dated April 3, 1978, Philip D. Holmes, Land Surveyor - Civil Engineer," and which was recorded with the Registry in Plan Book 328, Page 85 (the "1978 Plan"). 





4. The land comprising Lots 1, 2, 3, 4 and 5 as shown on the 1978 Plan had been deeded to Robert C. Howard, Jr.'s mother Evelyn V. Howard as one parcel by a deed dated September 25, 1967 and recorded with the Registry in Book 1354, Page 357. This deed made no reference to "Swift Avenue" in any of its bounding calls or otherwise. 





5. The 1978 Plan divided the property deeded to Evelyn V. Howard in 1967 into five lots: Lot 1, with frontage on Scranton Avenue, a public way; Lot 2, with frontage on Scranton Avenue and Francis Avenue, a dead-end private way intersecting with Scranton Avenue; Lot 3, with frontage on Francis Avenue, Lot 4, with frontage on Francis Avenue; and Lot 5, with frontage on Francis Avenue. 





6. Francis Avenue is shown on the 1978 Plan as a private way accessible from Scranton Avenue, a public way on which Lot 1 has 103 feet of frontage. 





7. Swift Avenue is shown on the 1978 Plan by two dotted lines, running from Francis Avenue to the northeasterly boundary of Lots 1 and 4, with half of its width running over Lots 3 and 1, and the other half of its width running over Lot 4. Swift Avenue is not labelled as either a public way or a private way, and the plan gives no dimensions for its length or width, or its other dimensions, such as curb radii where it meets Francis Avenue. 





8. None of the deeds for Lots 1, 3, or 4 describe any part of the lots as bounding on Swift Avenue, nor do any deeds of Lots 1, 3, or 4 purport to grant any rights to use of Swift Avenue as a way. They either describe the lots simply by reference to the 1978 Plan, or they describe the lots as bounded by the other lots, and not by Swift Avenue. For example, like the deeds for Lot 1, a deed of Lot 4, dated November 1, 2019, and recorded with the Registry in Book 31645, Page 300, describes Lot 4 as being bounded southeasterly by Lots 1 and 3, and not by Swift Avenue. 





9. The "first deed out" of Lot 1 is actually two deeds, each comprising a deed of a one-half interest in Lot 1. The first deed is a deed from Evelyn H. Reid, formerly Evelyn V. Howard, to her son Robert C. Howard, Jr. The deed is dated October 19, 1978, and was recorded with the Registry in Book 2832, Page 297 on December 1, 1978. The deed describes the bounds of the lot consistently with the later deed to the plaintiff. The lot is described as bounded by land of the town of Falmouth, by Scranton Avenue, by Lots 2 and 3 on the 1978 Plan, and by Lot 4 on the 1978 Plan. There is no mention of a "Swift Avenue" in any of the bounding calls or otherwise. The deed, like all the other deeds of Lots 1, 2, 3 and 4, [Note 2] describes as appurtenant to the lot "the right to use Francis Avenue for all purposes for which ways are used in the Town of Falmouth." 





10. Robert C. Howard, Jr. obtained the balance of the fee interest in Lot 1, subject to a life estate retained by his mother, in a deed identical to the October 19, 1978 deed. This deed, dated January 10, 1979, was recorded with the Registry on January 11, 1979 in Book 2855, Page 195. 





11. Lot 1 has approximately 103 feet of frontage on Scranton Avenue, a public way in the town of Falmouth. Plaintiff has built, although it is not yet completed, a single-family dwelling on Lot 1 near the Scranton Avenue end of the property. The dwelling has an attached two-car garage facing Scranton Avenue. There is no curb cut or driveway adjacent to the garage for reasons that are unexplained in the record. The absence of a curb cut and driveway is immaterial, as the plaintiff made no showing that Lot 1 is inaccessible from Scranton Avenue for any legal or physical reason. In fact, it is undisputable that Lot 1 is accessible by foot or by vehicle from Scranton Avenue, as demonstrated by the photograph of a truck parked on the lawn in front of the unfinished dwelling, notwithstanding the lack of a curb cut. [Note 3]





12. There is no dispute between the parties regarding any material fact as to whether Swift Avenue, in the location in which it is nominally shown on the 1978 Plan, has remained a "paper street" that has never actually existed on the ground. The defendants claim that at the time of the 1995 conveyance of Lot 1 to the plaintiff, the area shown as Swift Avenue on the 1978 Plan was overgrown and impassable by foot or vehicle. [Note 4] while the plaintiff claims that Swift Avenue was used by the plaintiff for access to Francis Avenue during the construction of the dwelling on Lot 1. [Note 5] Notably, however, the plaintiff does not claim that Swift Avenue was staked, graded or improved as a way in any fashion, merely that they traversed over the area shown as the way on the 1978 Plan. I find that there is no dispute of material fact that Swift Avenue was not staked or improved as a roadway in any fashion, regardless whether the plaintiff traversed its location. The resolution of ny dispute of fact as to whether the plaintiff traversed the unimproved location of Swift Avenue is immaterial to the resolution of the legal issues in this case. 





STANDARD OF REVIEW 





 Summary judgment may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission...together with the affidavits...show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mass. R. Civ. Proc. 56(c). In reviewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). 





 "Summary judgment, when appropriate, may be rendered against the moving party." BourgeoisWhite, LLP v. Sterling Lion, LLC, 91 Mass. App. Ct. 114 , 118-119 (2017), quoting Mass. R. Civ. Proc. 56(c) and Reporter's Notes to Rule 56(c) ("Because by definition the moving party is always asserting that the case contains no factual issues, the court should have the power, no matter who initiates the motion, to award judgment to the party legally entitled to prevail on the undisputed facts"), and cases cited. 





DISCUSSION 





I. PLAINTIFF DOES NOT HAVE AN IMPLIED EASEMENT TO ACCESS FRANCIS AVENUE VIA "SWIFT AVENUE." 





 "An implied easement arises when no easement appears in the record of a conveyance, but 'there is evidence tending to show an intent of the parties'" to create such an easement. Alexander v. Juchno, 21 LCR 621 , 632 (2013) (Foster, J.), quoting Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 284 Mass. 100 , 104 (1933). "An implied easement is 'founded on the idea that it is the purpose of the parties that the conveyance shall be beneficial to the grantee,'" even if it had not been expressed in the instrument of conveyance. Ward v. McGlory, 358 Mass. 322 , 325, (1970), quoting Orpin v. Morrison, 230 Mass. 529 ,533 (1918). Implied easements "must be found in a presumed intent of the parties, to be gathered from the language of the instruments when read in the light of circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." Dale v. Bedal, 305 Mass. 102 , 103 (1940). See also, Labounty v. Vickers, 352 Mass. 337 , 344 (1967). The actual subjective intent of the grantor to grant an easement is not required; the presumed objective intent of the grantor to grant an easement, based upon the circumstances of the conveyance, is required for the court to find an easement by implication. Flax v. Smith, 20 Mass. App. Ct. 149 , 153 (1985). "The burden of proving the existence of an implied easement is on the party asserting it." Reagan v. Brissey, 446 Mass. 452 , 458 (2006). 





 The plaintiff has offered no evidence from which a trier of fact could infer that it was the intent of the grantor of any of the deeds of Lot 1, to Robert C. Howard, Jr., or the subsequent deed to the plaintiff, to grant an implied easement over Lots 3 and 4 in the location of the paper street Swift Avenue to Francis Avenue. Starting with the language of the deeds for Lot 1, as well as the other lots shown on the 1978 Plan, the lots are all described, without exception, as bounding on the other lots, and not on "Swift Avenue," this being the first indication that (1) Swift Avenue did not exist on the ground at the time of the conveyances, and (2) there was no intent of either Evelyn Howard, as the grantor to her son Robert C. Howard, Jr., or Robert C. Howard, Jr., as grantor to the plaintiff, to convey a lot with rights on a way other than Scranton Avenue and Francis Avenue. 





 The language of the deeds for Lot 1 gives a further objective indication that there was no intent of the grantors to grant easement rights over Lots 3 and 4 for access to Francis Avenue. The grantors knew how to make an explicit grant of easement and did so in the Lot 1 deeds. The deeds for Lot 1 explicitly grant rights to use Francis Avenue, a private way, which is accessible from the frontage of Lot 1 over Scranton Avenue. If the grantors in the Lot 1 deeds had intended to grant an easement over Lots 2 and 3 to provide a shortcut to Francis Avenue, they would have included such an easement explicitly along with the grant of access (over Scranton Avenue) for the use of Francis Avenue. 





 Another objective indication from the circumstances attendant to the conveyances of Lot 1 from which it can be concluded that there was no intent to grant rights across Lots 3 and 4 is that there was no need for such an implied easement, as Lot 1 has ample frontage, 103 feet on Scranton Avenue, a public way. The reservation in the deeds for Lot 1 of an easement for use of Francis Avenue is found in every deed of the lots shown on the 1978 Plan, and all these lots have direct access to Francis Avenue either from their frontage on Francis Avenue, frontage on Scranton Avenue, or both. 





 The 1978 Plan, which shows Swift Avenue by dotted lines, does not change, and in fact reinforces, the conclusion that the grantors of Lot 1 did not grant an implied easement over "Swift Avenue." Swift Avenue is shown on the plan only by dotted lines, and without being labelled, as are Scranton Avenue and Francis Avenue, as either a public way or a private way, and without any dimensions for Swift Avenue being given on the plan, as they are given for Scranton Avenue and Francis Avenue. Furthermore, the mere fact that Swift Avenue was shown on the 1978 Plan in any fashion cannot be the basis for the recognition of any easement rights. "The mere recording and approval of a subdivision plan which refers to a roadway does not convey an easement in favor...of those owning property abutting the subdivision...." Patel v. Planning Bd. of North Andover, 27 Mass. App. Ct. 477 , 480-481 (1989). 





II. PLAINTIFF DOES NOT HAVE AN EASEMENT BY ESTOPPEL TO ACCESS FRANCIS AVENUE VIA "SWIFT AVENUE." 





 "The Massachusetts cases recognizing that an easement may be created by estoppel have fallen into two general categories. In the first category, "'when a grantor conveys land bounded on a street or way, he and those claiming under him are estopped to deny the existence of such street or way, and the right thus acquired by the grantee (an easement of way) is not only coextensive with the land conveyed, but embraces the entire length of the way, as it is then laid out or clearly indicated and prescribed.' Casella v. Sneierson, 325 Mass. 85 , 89 (1949), and cases cited. This rule is applicable even if the way is not yet in existence, so long as it is contemplated and sufficiently designated." Patel v. Planning Bd. of North Andover, supra, 27 Mass. App. Ct. at 481. This category of easement by estoppel cannot apply on the facts of the present case because neither Evelyn Howard nor Robert C. Howard, Jr. conveyed Lot 1 as "bounded on a street or way." As is noted above, all of the deeds conveying Lot 1 do so with boundary calls to other lots, and with no deed describing Lot 1, or any other lot on the 1978 Plan, as bounded on Swift Avenue. 





 In the second category, "where land situated on a street is conveyed according to a recorded plan on which the street is shown, the grantor and those claiming under him are estopped to deny the existence of the street for the entire distance as shown on the plan." Id. at 482. However, under either prong of the rule noted above, where there is no showing that the way over which rights are claimed was at least staked out on the ground at the time of conveyance, and instead "merely existed on paper," there can be no easement by estoppel. Wellwood v. Havrah Mishna Anshi Sphard Cemetery Corp. 254 Mass. 350 , 356 (1926). Similarly, where a passageway shown on a recorded plan had not been built on the ground in the location shown on the plan, no easement by estoppel or otherwise accrued to the owners of the abutting lots. Goldstein v. Beal, 317 Mass. 750 (1945). 





 Here, Swift Avenue was shown on an older, and evidently never consummated plan of subdivision that predated the 1978 Plan and for which the 1978 Plan was evidently a resubdivision. [Note 6] The undisputed facts are that at the time of the first conveyance of Lot 1 to Robert C. Howard, Jr. and at the time of the conveyance to the plaintiff, Swift Avenue was not staked or constructed on the ground, and the conveyances of all of the lots shown on the 1978 Plan were made without reference to Swift Avenue as a bound. These are uncontradicted facts indicating that not only was Swift Avenue not in existence, but that its existence was not contemplated; it was merely a holdover paper street from an earlier plan, whose construction was not necessary or contemplated by the new plan as implemented by the deeds for the new lots. 





III. PLAINTIFF HAS NO RIGHTS OVER SWIFT AVENUE PURSUANT TO THE DERELICT FEE STATUTE. 





 In Count III of the First Amended Complaint, the plaintiff claims rights over Swift Avenue through operation of G. L. c. 183, § 58, which provides a statutory rule of construction granting fee interest to the centerline of any way, public or private, when land is conveyed "abutting a way." "The term 'abutting,' in the context of fee ownership of ways after conveyance of property bounded on a way, thus refers to property with frontage along the length of a way." Emery v. Crowley, 371 Mass. 489 , 494 (1976). Here, the deed conveying Lot 1 to the plaintiff was not, in the language of G. L. c. 183, § 58, an "instrument passing title to real estate abutting a way," as the bounds of Lot 1 as conveyed in the deeds for Lot 1 were described without reference to Swift Avenue. It is immaterial that an earlier recorded plan may have shown a part of what is now Lot 1 bounding on Swift Avenue. The earlier plan was superseded by the 1978 Plan and the deeds by which Lot 1 was actually conveyed. Accordingly, whatever rights may accrue pursuant to G. L. c. 158, § 58, did not accrue to the plaintiff with respect to Swift Avenue.





IV. COUNT VI OF THE FIRST AMENDED COMPLAINT, PURPORTING TO MAKE A CLAIM PURSUANT TO G. L. c. 240, § 14A, IS DISMISSED SUA SPONTE. 





 Count VI of the First Amended Complaint purports to seek a declaration pursuant to G. L. c 240, § 14A declaring that the defendants' lots have been merged for zoning purposes and may not be considered as separate buildable lots. This claim was not the subject of the defendants' motion for summary judgment, but is dismissed sua sponte for the following reasons. 





 G. L. c. 240, § 14A provides: 





 The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated, which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition. The right to file and prosecute such a petition shall not be affected by the fact that no permit or license to erect structures or to alter, improve or repair existing structures on such land has been applied for, nor by the fact that no architects' plans or drawings for such erection, alteration, improvement or repair have been prepared. The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not. 





 The first fatal defect in the plaintiff's claim under the section is that the statute does not provide a private right of action against an abutting landowner. The right of a landowner under the section is to bring a petition "against the city or town wherein such land is situated." The plaintiff has no right under the statute to seek a determination with respect to the validity of zoning by suing an abutting landowner directly. 





 Furthermore, and more fundamentally, the plaintiff's claim is defective because it seeks a judgment concerning a speculative use of the defendants' properties, and it does so without exhausting administrative remedies. Although Section 14A is primarily for the benefit of a landowner seeking a determination of the effect of a zoning provision on his or her own land, where a sufficient direct effect is shown, a landowner may obtain such a judgment with respect to the proposed use of the land of another. This use of the statute is more limited than that afforded to a landowner seeking a determination with respect to his own land. "A landowner may also petition under § 14A concerning land other than his own in the limited circumstances where the proposed use on that other land has a direct effect on his." Fitch v. Board of Appeals of Concord, 55 Mass. App. Ct. 748 , 753- 754 (2002). Section 14A "authorizes a petition by a landowner on whose land there is a direct effect of the zoning enactment through the permitted use of other land." Harrison v. Braintree, 355 Mass. 651 , 655 (1969). However, the use of Section 14A generally may not be sanctioned as a way to avoid exhaustion of administrative remedies that are otherwise available. See Whitinsville Retirement Society, Inc. v. Town of Northbridge, 394 Mass. 757 , 762-763 (section may not be used to "sidestep an appeal"); and Clark & Clark Hotel Corp. v. Building Inspector of Falmouth, 20 Mass. App. Ct. 206 , 212 (1985) ("Exhaustion is the normal rule and exceptions to it are not to be readily invited."). 





 More importantly for the present case, a Section 14A action may not be used as a preemptive attack on uses that are not the subject of an application or permit where there is an insufficient likelihood that the uses complained of will actually come to fruition and details of the proposed use have not been specified. "[T]he allowance of preemptive attacks by abutters against theoretical uses would unduly burden both land owners and the Land Court." Hansen & Donahue, Inc. v. Town of Norwood, 61 Mass. App. Ct. 292 , 296 (2004). The use of Section 14A must be with respect to a question of "the validity or invalidity of a zoning restriction applicable to a specific lot or use." Amberwood Development Corp. v. Board of Appeals of Boxford, 65 Mass. App. Ct. 205 , 208 (2005) (emphasis added). 





 Here, there is no suggestion in the record that the defendants have impending plans to build on any of Lots 2, 4 or 5. "The feared use must be likely, not merely hypothetical or theoretical...And it must have a provable, adverse effect on the neighbor's land." Frost v. Percelay, 20 LCR 454 , 457 (Land Court, 2012) (Long, J.). The provision in the statute to the effect that a landowner need not have the benefit of a building permit or architects' plans, is primarily for the benefit of a landowner seeking a determination with respect to his own land, and not for the benefit of other landowners challenging a neighbor's proposed use of his or her land, and does not relieve the neighboring landowners of the requirement that they prove a direct effect on their land that is not theoretical or hypothetical. Id. 





 The plaintiff has failed to show on the record that her fear that the plaintiffs will build on lots she believes to be unbuildable is anything but hypothetical, and she has failed to show why, even if not hypothetical, she should not be required to exhaust the administrative remedies provided by G. L. c. 40A should the defendants apply to build on any of their lots. 





V. THE LAND COURT HAS NO SUBJECT MATTER JURISDICTION OVER THE REMAINING CLAIMS AND COUNTERCLAIMS IN THIS ACTION. 





 The court has, as discussed above, disposed of all the claims and counterclaims constituting claims of a right, title or interest in land within the direct jurisdiction of the Land Court pursuant to G. L. c. 185, § 1. 





 The plaintiff's only remaining claims not addressed above are Count IV, which is a claim for money damages by reason of the alleged construction of a so-called "spite fence," alleged to consist of trees planted along the boundary between Lots 2 and 1, and Count V, a claim repetitive of Count IV, in which a similar tort claim for damages is made with respect to interference with the easement the court has found does not exist, and interference with plaintiff's view, not pertaining to any claimed easement or right, by a fence along "the easement" and trees along the boundary of Lot 2 where it bounds on Lot 1. The plaintiff's spite fence claim pursuant to G. L. c. 49, § 21, is, by statutory definition, "an action of tort for damages." 





 Similarly, the defendants' counterclaims (other than Count I, seeking a declaratory judgment regarding the easement rights addressed above) make claims also sounding in tort. Count II of the counterclaim seeks treble damages for trespass and damage to trees in violation of G. L. c. 242, § 7, and Count III of the counterclaim seeks damages for private nuisance resulting from the unfinished construction on the plaintiff's property. 





 These claims and counterclaims sound in tort and seek money damages, not relief relating to a right, title or interest in land. The Land Court may exercise jurisdiction over such claims when they are ancillary to claims involving a right, title or interest in land that is being adjudicated by the Land Court, and thus may, in appropriate circumstances, award damages for certain trespass claims or even claims under G, L. c. 242, § 7, when such claims are tried in conjunction with claims within the direct jurisdiction of the court. Ritter v. Bergmann, 72 Mass. App. Ct. 296 (2008). 





 However, having disposed of the claims in this action over which the Land Court has direct jurisdiction, there is no longer occasion for the court to exercise ancillary jurisdiction over claims that are no longer ancillary to any claim presently and properly before the court. 





CONCLUSION 





 For the reasons stated above, the defendants' motion for summary judgment on Counts I, II, and III of the First Amended Complaint and Count I of the defendants' counterclaim is ALLOWED, Count VI of the First Amended Complaint is DISMISSED on the court's own motion, and Counts IV and V of the First Amended Complaint and Counts II and III of the counterclaim are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. 





 Judgment will enter accordingly. 





FOOTNOTES
[Note 1] Plaintiff also claimed, in Count I, an express easement, but acknowledged at the hearing of the summary judgment motions in this case that there is no basis for such a claim. 

[Note 2] No deeds for Lot 5 were included in the record. 

[Note 3] Plantiff's Appendix, Exhibit 18. 

[Note 4] Affidavit of Robert C. Howard, Jr., ¶ 9. 

[Note 5] Affidavit of Nancy M. (O'Connell) O'Brien, ¶¶ 4,5. 

[Note 6] Plan appended as Exhibit H to First Amended Complaint. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.